W. H. REED, Appellant, v. THORNTON COOKE, GEO. K. BUECKING, CHESTER COOKE, J. M. MILLER, GEO. E. POWELL, CHAS. L. SMACK, W. C. WIDENER, E. H. WRIGHT, C. A. BUSCHER, H. J. EATON, CHAS. A. SUMNER and C. W. SYDENSTRICKER.—55 S. W. (2d) 275.

Court en Banc, November 3, 1932.

508

*Ed. A. Harris* and *Chas. N. Sadler* for appellant.

*Charles M. Blackmar* and *Ralph M. Jones* for respondents; *Meservey, Michaels, Blackmar, Newkirk & Eager* of counsel.

FERGUSON, C.—This is an action for damages for fraud and deceit. Plaintiff charges that he was induced by false and fraudulent statements of defendants to purchase 250 shares of bank stock, having a market value of $95 per share, at a price of $135 and to resign a position in which he was earning a salary of $4,000 per year upon the promise of defendants, stockholders in the bank, to procure his appointment as general manager of said bank which they failed to do.

510

Actual damages in the sum of $30,000 are alleged and punitive damages in the sum of $15,000 asked. The defendants filed separate, but identical, demurrers to the petition on the ground that "said petition fails to state a cause of action." The demurrers were sustained and plaintiff, refusing to plead further, appealed from the judgment dismissing his petition. The petition is as follows:

"Comes now the above named plaintiff and for his first amended petition states; that on the first day of October, 1923, and for a long time prior thereto, he was in the employ of the United States Government as a National Bank Examiner at a salary of $4,000 per year, and as such examiner had gained much knowledge of the banking business, and is and was at all said times an experienced banker and capable and competent to manage and direct the affairs of a bank; that as a result of years of dealing with bankers and financial interests, plaintiff had built up a large acquaintance and personal following among such people living in the states of Missouri, Kansas and territory adjacent to and tributory to Kansas City, Missouri; that as a basis for the prosecution of the banking business in said territory, said acquaintance and following was of great value.

"That sometime shortly prior to October 1, 1923, the defendant Thornton Cooke, and all of the above named defendants, entered into an unlawful and malicious conspiracy to cheat and defraud this plaintiff, and in order to carry out and give effect to their wrongful designs, the defendant Thornton Cooke acting for himself and as agent or trustee for the other above named defendants, stated and represented to this plaintiff that he, Thornton Cooke, and certain of his associates, including all of the above named defendants owned a controlling interest in the stock of the 12th Street Bank of Kansas City, Missouri, and that he, Thornton Cooke, and his associates, the above named defendants had assembled and pooled some 250 shares of the capital stock of said bank, and that said stockholders had appointed the said Thornton Cooke agent or trustee to represent the above named owners of the stock included in said pool in the disposal and sale of same at an agreed and fixed price of $135 per share, and that the Board of Directors and officers of the 12th Street Bank had also appointed the said Thornton Cooke, as agent for the bank to select and designate a man to act as advisor and general manager to assist the officers and board of directors of said 12th Street Bank in building up and conducting the business of same, and that the person selected for that position by him, Thornton Cooke, would be required to purchase said 250 shares of stock at the price above mentioned; that as an additional assurance and inducement for plaintiff's purchasing said stock at the price of $135 per share, the said Thornton Cooke stated and represented to this plaintiff

that he, Thornton Cooke, and his associates owned a controlling interest in the stock of said bank and by virtue of that fact were in a position to demand, and would request, and he did guarantee to this plaintiff, that the Board of Directors of said bank would appoint or select plaintiff to the office or position of advisor and general manager in said bank if he purchased the above mentioned 250 shares of stock at the price of $135, and that as such officer or employee this plaintiff could and would exercise great power and influence in directing the affairs of the said 12th Street Bank; that the said Thornton Cooke did at said time state and represent to plaintiff that he had consulted the Board of Directors of said Bank with reference to his selection of this plaintiff for the said position as Advisor and General Manager, and that said Board of Directors had informed him, Thornton Cooke, that this plaintiff's elevation to that office or position was agreeable and desirable, and that as compensation for such services as he might render said bank he was to and would receive a salary from said bank of at least $300 per month, for the time of his connection with the bank, which should and would be simultaneous with his purchase of said stock until such shares of stock were worth and were of the market value of $135 per share, and for such longer time as such employment was mutually agreeable; that at said time the shares of stock of said bank were only of the approximate market value of $95 per share.

"That plaintiff relying upon the statements and representations of the above named defendants, acting through and by their agent, servant or trustee, Thornton Cooke, and believeing that the said Thornton Cooke was acting as agent and representative of said bank in the selection for it of an advisor and General Manager, and believing that the said Thornton Cooke. and his associates owned a controlling interest in the stock of said bank, and that they were in a position to and would insist upon, and could secure, his appointment, by the Board of Directors of said Bank, to the position as General Manager of said bank, and at the salary heretofore mentioned, and that as said officer or agent he could and would be permitted to outline, suggest and direct the business policies of said bank, subject to the approval of said Board of Directors, plaintiff did thereafter make an examination of said bank, and as a result of same became convinced that if he were in a position to help direct or control the policies of said bank he could in time build up the business of said bank until the shares of stock would be worth $135 per share or more, and this plaintiff did, as a direct result of said promises and representations of the defendants, as above mentioned resign his position as National Bank Examiner, and did thereafter on or about the first day of November, 1923, purchase of defendants the said 250 shares of bank stock at the price of $135 per share.

"That plaintiff did not secure the position as General Manager of said bank and defendants did not, at any time after the purchase of said stock by plaintiff, secure or attempt to secure such an appointment, office or position for plaintiff as per defendant's promises and agreements heretofore named, and did not control nor direct the policies nor officers of said bank, nor majority of the stockholders of said bank, and did not own, control or represent a majority of the shares of stock of said bank, and the said Thornton Cooke was not the agent, representative nor designated or named as the person to select an advisor and general manager for the Board of Directors of said bank, and the statements, representations and promises made to this plaintiff by the defendants by and through their agent or trustee Thornton Cooke were false and fraudulent, and were at said time by said defendants, and all of them, known to be false and untrue and were made and uttered by defendants for the purpose and with the intent to cheat and defraud this plaintiff, and at the time said representations and promises were made, the defendants had the fixed intention and purpose of not delivering to or securing for plaintiff any office as general manager, or of placing him in any position where he would participate in the management of said bank, or of attempting to do so, and they had the fixed purpose and intention of not paying or having paid to him a salary of at least $300 per month until such time as the said bank stock reached a marketable value of $135 per share. That all of said statements, representations, promises and agreements made by each and all of said defendants were made, done and said for the fraudulent purpose and with the sole intent on the part of defendants to induce plaintiff to purchase said stock of defendants at the exorbitant price of $135 per share; that as a direct result of the false and fraudulent acts, and of the unlawful and deliberate scheme and conspiracy to defraud, done and perpetrated as aforesaid by defendants, plaintiff was caused to and did resign his position as National Bank Examiner, and to be deprived of his salary and was induced to and did pay $10,000 in excess of the reasonable marketable value of said stock, wherefore he says that as a direct result of defendants' said acts he has been damaged in the sum of $30,000 actual damages.

"Plaintiff further states that because the acts of defendants above complained of were done wilfully, deliberately, unlawfully, wrongfully and maliciously he is entitled to a further sum of $15,000 as punitive or exemplary damages.

"Wherefore plaintiff prays judgment against each and all of the within named defendants in the sum of Thirty thousand dollars actual damages, and because of the unlawful, wrongful and deliberate acts of the defendants, plaintiff prays the additional sum of Fifteen

thousand dollars as punitive or exemplary damages, together with his costs herein expended.''

The petition may, we think, be fairly reduced and summarized as follows, that plaintiff was an experienced banker, capable and competent to manage and direct a banking business; that the defendants, a group of stockholders in the 12th Street Bank, pooled 250 shares of the capital stock of the bank and appointed defendant Cooke as their agent to sell same at a fixed price of $135 per share though the market value of said stock was, at the time, approximately $95 per share which was known to plaintiff; that Cooke represented and stated to plaintiff that he (Cooke) was the agent of the bank to ''select and designate'' a general manager for the bank and that the person selected for that position would be required to purchase the 250 shares of stock at $135 per share; that as an inducement to plaintiff to purchase said stock at that price Cooke ''stated and represented'' to plaintiff that defendants ''owned a controlling interest in the stock'' of the bank ''and would request and he (Cooke) did guarantee to plaintiff that the board of directors would appoint or elect plaintiff to the office or position'' of general manager after he purchased the 250 shares of stock at the price fixed and that Cooke stated and agreed that plaintiff's employment as general manager would commence simultaneously with the purchase of the stock, at a salary of $300 per month, and continue at that salary until the shares of stock of the bank ''were worth and were of a market value of $135 per share and for such longer time as such employment was mutually agreeable;'' that plaintiff then made an examination of the bank and purchased the 250 shares of stock at the price of $135 per share and resigned his position preparatory to becoming general manager of the bank but was not elected to that position and ''defendants did not at any time after the purchase of said stock by plaintiff secure or attempt to secure such appointment for plaintiff as per defendants' promises and agreements;'' that defendants did not own a majority of the shares of stock of said bank and that the ''statements, representations and promises,'' made by Cooke were false and fraudulent and were made ''for the purpose and with the intent to cheat and defraud plaintiff, and at the time they were made defendants ''had a fixed intention and purpose of not . . . securing for plaintiff'' the office of general manager at the salary and upon the terms stated.

In this State certain special statutory provisions vest the management of the ''business and affairs'' of banking corporations in the board of directors provided for by statute (Sec. 5363, R. S. 1929) and empower the board of directors to ''appoint and remove any cashier or other officer or employee at pleasure.'' [Sec. 5380,

R. S. 1929.] It is not alleged that any of the defendants were members of the board of directors but merely that as stockholders they promised to request plaintiff's appointment as general manager of the bank by the board of directors. It is alleged that Cooke represented that he was an agent for the bank "to select and designate a man to act as general manager" and that the board of directors had advised him that "plaintiff's elevation to that office was agreeable and desirable" and that Cooke "would guarantee that the board of directors would appoint or elect plaintiff to the office of general manager." The petition states that plaintiff was experienced in and familiar with the banking business and he must have therefore known that the appointment of bank officers and the management of the affairs of the bank was exclusively vested in the board of directors and since the plain provisions of our statutes so declare he must, in common with all men, be presumed to know the law. Thus plaintiff must be held to have known that the appointment of bank officers was an exclusive power and function of the board of directors acting in that capacity, which could not be delegated to an individual and that Cooke's so-called guarantee was not supported by any power or authority possessed by him or the other defendants to make same effective. [2] Further in view of the provisions of the statute, supra, relating to banking corporations, that "the directors may appoint and remove any cashier or other officer or employee at pleasure" plaintiff must have known that the alleged agreement or promise by Cooke that plaintiff would be employed as general manager at a salary of $300 per month to continue until such time as the stock of the bank became worth and had a market value of $135 per share was not enforceable and would not have been enforceable even if such an agreement had been entered into by the board of directors. [Citizens Bank of Hayti v. Wells, 269 Mo. 190, 190 S. W. 314.] Plaintiff cannot therefore maintain his claim to have been deceived by the alleged statements by Cooke that he was empowered to select a general manager or his promise to cause plaintiff's selection by the board of directors to that position under a contract to continue him in such position at the stated salary until the stock became worth and had a market value of $135 per share.

The real gravamen of plaintiff's complaint is that he was induced to buy stock at $135 per share by the promise of defendants to thereafter effect his election as general manager of the bank at a salary of $300 per month and to continue him in such position until the stock of the bank became worth and had a market value of $135 per share but that he was not elected to that position hence the damages claimed. The other matters alleged are collateral. "The general rule which is supported by numerous decisions in almost all

jurisdictions," is that the alleged fraudulent representations must relate to a present or preexisting fact and that fraud "cannot ordinarily be predicated on unfulfilled promises or statements as to future events." [51 A. L. R. 49.] However, in the application of this general rule exceptions or limitations have arisen. Also distinctions have been made between material representations which are to be regarded as in effect statements of present and existing facts and those which are wholly promissory in their nature and cases may be found where alleged false representations relating to a present condition or existing facts are so blended and inseparably linked with the promise to do something in the future as to afford the basis of an action for fraud but the alleged misrepresentations of fact with which the promise is blended or associated must not be of a collateral matter merely. It will be observed that in this case the material statements ascribed to defendants, upon which plaintiff says he relied, and which are alleged to have induced him to buy the stock, relate to something to be done and performed by defendants in the future and are wholly promissory. The representations as to certain purported existing matters are merely collateral. [Shoup v. Tanner-Buick Co., 211 Mo. App. 480, 245 S. W. 364.]

One limitation of the general rule, adopted in many jurisdictions, and which has been denominated by text-writers as the majority rule, is "that fraud may be predicated on a promise accompanied by a present intention not to perform it and made for the purpose of deceiving the promisee and inducing him to act where otherwise he would not have done so and by virtue of which the promisor has procured either real or personal property from the person to whom the promise is made." [12 R. C. L. p. 261.] It is quite clear that plaintiff has attempted to bring himself within this rule as appears by the allegations of the petition that the "statements, representations and promises made to this plaintiff by the defendants . . . were false and fraudulent, and were at the time by said defendants, and all of them, known to be false and untrue and were made and uttered by defendants for the purpose and with the intent to cheat and defraud this plaintiff and at the time said representations and promises were made, the defendants had the fixed intention and purpose of not delivering to or securing for plaintiff the office of general manager . . ., or of attempting to do so, and they had the fixed purpose and intention of not paying or having paid to him a salary of at least $300 per month until such time as the said bank stock reached a marketable value of $135 per share." But the rule in this State is "that fraud cannot be predicated upon a mere promise even though accompanied by a present intention not to perform it, on the ground that even under such circumstances

the promise is not a misrepresentation of an existing fact." [12 R. C. L. p. 262.] In Younger v. Hoge, 211 Mo. 444, 455, 111 S. W. 20, 22, this court said: "One reading the plaintiff's testimony is impressed with the idea that his main grievance is that he was not given the position of secretary and treasurer at a salary of $100 per month. Assuming that the evidence proved that such promise was made, it would not justify a rescission of the contract on the theory of misrepresentation. A promise, though made without intention to fulfill, is not a misrepresentation of an existing fact. [Wade v. Ringo, 122 Mo. 322; Estes v. Desnoyers Shoe Co., 155 Mo. 577.]" The rule as thus announced seems to have been adhered to by our courts. The St. Louis Court of Appeals in Missouri Loan and Investment Co. v. Federal Trust Co., 175 Mo. App. 646, 651, 652, 158 S. W. 111, 113, says; "A representation, to amount to fraud, must assert a fact or facts as existing and cannot relate to the future. If it does, it is not fraud, whatever may be the intention of the party or the effect of his statement." In Metropolitan Paving Co. v. Brown-Crummer Inv. Co., 309 Mo. 638, 664, 274 S. W. 815, 823, this court said: "A promise to do a certain thing, with a present intention not to do it, is not actionable." Citing with approval Younger v. Hoge, supra, and Missouri Loan & Investment Co. v. Federal Trust Co., supra, this court said in Bryan v. L. & N. Railroad Co., 292 Mo. 535, 545, 238 S. W. 484, 487, "The implied representation might have amounted to a promise of defendant as to indefinite future action but not as to a fact then existing. This being true under the adjudicated cases in this State defendants conduct is not actionable." Again in Grand Lodge of the United Brothers of Friendship, etc., v. Massachusetts Bonding & Ins. Co. (Mo.); 324 Mo. 938, 25 S. W. (2d) 783, 788, it is said: "Another well-settled rule is that false representations, in order to constitute actionable fraud, must relate to past or existing facts. Representations, although false, which relate to something to be done in the future, cannot be made the basis of a charge of fraud." [See, also, Estes v. Desnoyers Shoe Co., 155 Mo. 577, 56 S. W. 316; Shoup v. Tanner-Buick Co., supra; Mathews v. Eby, 149 Mo. App. 157 and Hockley v. Hulet Bros. Storage Co. (Mo. App.), 16 S. W. (2d) 749.] Following the rule prevailing in this State and applying same to the allegations of the petition herein it is our opinion that the judgment of the trial court should be affirmed. It is so ordered.

The divisional opinion of FERGUSON, C., is adopted as the opinion of the court en banc. *Ragland, Frank, Ellison* and *Henwood, JJ.*, and *Atwood, C. J.*, concur; *Gantt, J.*, dissents in separate opinion in which *White, J.*, concurs.

GANTT, J. (dissenting)—I hereby adopt the following opinion of STURGIS, C., as my dissenting opinion in this cause:

I adopt the statement of the case made by Commissioner FERGUSON as correct.

■ I think there is no doubt but that the petition in this case states a cause of action under the rule stated in 12 Ruling Case Law, section 28, page 261, that "It is very generally held that fraud may be predicated of a promise accompanied by a present *intention not to perform it* and made for the purpose of deceiving the promisee and inducing him to act where otherwise he would not have done so, and by virtue of which the promisor has procured either real or personal property from the person to whom the promise is made." The above is a well established exception to the general rule that fraud cannot be predicated on statements promissory in their nature and relating to future events; that false representations, in order to constitute actionable fraud, must relate to past or existing conditions. [12 R. C. L. sec. 21, p. 254.] The above exception to the general rule, which recognizes that a promise made with no intention to perform it, but merely as a means of obtaining money or property from another, amounts to actionable fraud, is supported by the great weight of authority, as will be seen by the cases cited in note 2, 12 Ruling Case Law, page 261. What is there said as to the minority view, to-wit, that fraud cannot be predicated upon a promise to do something in the future, though it be shown that there was no intention to perform it, is supported by decisions of only a few states, notably Illinois and Missouri, and possibly one or two others. Missouri is given as supporting the minority rule in Younger v. Hoge, 211 Mo. 444, 18 L. R. A. (N. S.) 94.

So, also, in 26 Corpus Juris, 1093, it is said: "Since the state of a man's mind is as much a fact as the state of his digestion, the weight of authority holds that if the falsity of the statement can be established, the representation of opinion, belief, or intent is an actionable representation of fact. This redress may be had for the dishonest expression of an opinion contrary to that really entertained by the speaker, especially if he is an apparently disinterested third person, or if a deliberately false opinion is expressed in terms imparting personal knowledge of the truth, *or for a promise made with the present intent of future breach.*" Cases are cited from the Federal courts and from more than twenty states supporting this rule. [See Note 99.] The contrary rule is then stated at page 1096 thus: "Other authorities hold that a misrepresentation of intention is purely promissory or matter of opinion, and therefore cannot constitute fraud, and that the proper remedy for a promise

518

made with the intention not to fulfill it is a suit upon the promise.'' Only two. or three states really adhere to this rule, and at page 1096 this note is appended: ''In Missouri (1) there are cases holding a promise made with intent to break it is fraud available for rescission. [Laswell v. National Handle Co., 147 Mo. App. 497; Culbertson v. Young, 86 Mo. App. 277.] (2) But later cases hold that rescission of a contract cannot be predicated upon a fraudulent promise since 'a promise, though made without intention to fulfill it, is not a misrepresentation of an existing fact.' Younger v. Hoge, 211 Mo. 444, 18 L. R. A. (N. S.) 94.''

The rule of law stated in Younger v. Hoge, supra, that ''a promise, though made without intention to fulfill it, is not a misrepresentation of an existing fact'' within the rule that a misrepresentation of facts affords a ground for rescission in an action based on fraud, cites Wade v. Ringo, 122 Mo. 322, 25 S. W. 901, and Estes v. Desnoyers Shoe Co., 155 Mo. 577, 56 S. W. 316. An examination of these cases, however, shows that neither of them involve, as a basis of fraud, a promise made with no intention to perform same. Moreover, the evidence in Younger v. Hoge, did not show a promise made as an instrument of fraud, with no intention to perform same, but, on the contrary, that defendant did try to secure for plaintiff the position and salary promised but failed for the reason disclosed by defendant at the time of making the conditional promise.

The Kansas City Court of Appeals in Culbertson v. Young, 86 Mo. App. 277, 282, opinion by Ellison, J., had ruled to the contrary, where the court said: ''The representation of a future intention will ordinarily not affect a contract, and a failure on the part of the promisor will not afford ground to the promisee for avoiding it. But if the promisor makes a false representation of his intention as to material matters, fraudulently intending at the time not to do what he represents he intends to do, it is ground for avoidance. [Cases cited.] When one buys goods on credit, he, at least tacitly, represents that he intends to pay for them, and if he, in fact, intends never to pay for them, he represents to the vendor a falsehood and is guilty of fraud, and the contract may be avoided and the goods recovered from the purchaser.''

And in Laswell v. National Handle Co., 147 Mo. App. 497, 542, the St. Louis Court of Appeals, opinion by Goode, J., said: ''Promises of something to be done in the future are not always ground for the rescission of the contract; but where a promise is made under such circumstances as this one was, with no intention to perform it, but was a fraudulent design to obtain a contract by giving the promise and then breaking it, those facts are grounds of rescission. [Cases cited.]'' The same view of that court is also reflected in

Loan & Investment Co. v. Trust Co., opinion by NORTONI, J., 175 Mo. App. 646, 650.

This question is the subject of the annotation to Cerny v. Paxton & Gallagher Co. (Neb.), 10 L. R. A. (N. S.) 640, where the Supreme Court of Nebraska held (2 Headnote): "Ordinarily deceit, to ground a recovery, must relate to existing facts; but if one person, by means of a promise which he makes with a secret intention of not performing it, induces another to part with his money or property, he is guilty of actionable fraud." Among many cases cited in support of this rule, the court cites Dowd v. Tucker, 41 Conn. 197, holding that "The procuring of property upon a promise which the party, at the time, does not intend to perform, is a fraud. And it makes no difference whether the property is real or personal;" and Goodwin v. Horne, 60 N. H. 485, holding that "Ordinarily false promises are not fraudulent, nor evidence of fraud, and only false representations of past or existing facts are actionable. . . . But, when a promise is made, with no intention of performance, and for the very purpose of accomplishing a fraud, it is a most apt and effectual means to that end, and the victim has a remedy by action." In the annotated note to that case under the head of "Rule where the promise is the instrument of the fraud," many cases are cited holding that an action for fraud will lie where the promisor had no intention to fulfill his promise. A few cases are cited to the contrary. And in a later annotation in 24 L. R. A. (N. S.) 736, this is said of the Missouri cases: "In none of the foregoing cases did it expressly appear that the promise was made with a preconceived intention not to perform the same. But in Younger v. Hoge, 211 Mo. 444, 18 L. R. A. (N. S.) 94, it was said that a promise, though made without intention to fulfill, is not a misrepresentation of an existing fact. This was said with reference to a promise of a salaried position in a corporation as an inducement to purchase stock. The court, however, said that the plaintiff's evidence did not establish the making of the promise."

This question is thoroughly considered in 51 American Law Reports, pages 1 to 172, where there are some five or six cases from different states reported touching this question, with an extended annotation citing all the authorities, to-wit:

Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S. W. 1034, 51 A. L. R. 1, holds (Syl.): "Although a statement by agents selling stock, as to future earnings and dividends, are merely opinions or promises, they are actionable if the agents knew them to be false, and they were made for the purpose of deceiving the customer who acted upon them."

Foster v. Dwire, 51 N. D. 581, 199 N. W. 1017, 51 A. L. R. 21,.

holds (Syl.): "Fraud may be predicated on the non-performance of a promise, where the promise is made for the purpose of accomplishing a fraud; the fact that the thing promised lies wholly in the future does not preclude the defendant from asserting fraud as a defense, when at the time the promise is made the promisor has no intention to perform, but intends by such promise to deceive the promisee, and induce him to act otherwise than he would have acted but for such promise."

Councill v. Sun Ins. Office, 146 Md. 137, 126 Atl. 229, 51 A. L. R. 29, holds (Syl.): "A false promise not intended to be performed, but made to trick and deceive another into the execution of a written instrument, is a fraud, and may, in an action on the instrument, be shown by any competent evidence, whether oral or documentary."

Holcomb & Hoke Mfg. Co. v. Auto Interurban Co., 140 Wash. 581, 250 Pac. 34, 51 A. L. R. 39, holds (Syl.): "Representations by a vendor of a popcorn machine that he has investigated the possible trade to be secured for the product, and his assertion, based on his experience in such matters, that it will produce a specified sum per month above expenses, if untrue, are actionable."

Palmetto Bank & Trust Co. v. Grimsley, 134 S. C. 493, 133 S. E. 437, 51 A. L. R. 42, holds (Syl.): "Inducing a contract by a promise which there is no intention at the time of performing is a fraud for which the contract may be rescinded."

In the annotation on this precise point in 51 American Law Reports, 63, this is said: "The weight of authority holds that fraud may be predicated on promises made with an intention not to perform the same, or, as the rule is frequently expressed, on promises made without an intention of performance. It is said that when a promise is made, the promisor, by necessary implication, asserts a present and bona fide intention to perform, and if, therefore, the intention to perform does not exist, there is a misrepresentation of fact upon which fraud may be predicated." A large number of cases from more than thirty states and from the Federal courts, as well as English and Canadian cases, are cited as so holding. The minority view to the effect that fraud cannot be predicated on an unfulfilled promise, even though at the time it is made there was no intention to perform, is stated in the annotation in 51 American Law Reports, page 78, and cases in a few states supporting this proposition are cited, including the Missouri cases which we have noted. This annotation gives an exhaustive review of the many cases on this subject and shows that while there are some cases to the contrary, the great weight of authority supports the rule that where a promise is used as an instrument of fraud in obtaining another's property, with no intention to fulfill the promise, an action for fraud will be sustained.

Time and space forbids a review or even mention of the numerous cases upholding the rule here contended for, but I mention one case written by Judge Cooley, Laing v. McKee, 13 Mich. 124, 87 Am. Dec. 738, which holds that it is a matter of no moment whether the fraud is perpetrated by means of a promise, upon which the owner relied and which the other did not intend to keep, or by untrue statements as to existing facts. Another leading case, Braddy v. Elliott, 146 N. C. 578, 16 L. R. A. (N. S.) 1121, holds that if, in order to effect an exchange of lands, one party made promises as to the erection of buildings on the property deeded by the promisor, which he had no intention of performing, this constitutes actionable fraud.

In the present case it is alleged that defendants, in order to induce plaintiff to purchase two hundred fifty shares of stock in the bank mentioned at an excessive valuation, represented that they and their associates owned a majority of the stock in such bank and that they had consulted with the board of directors, who had agreed to the selection of plaintiff as manager of the bank, and authorized the defendants to make the arrangement provided plaintiff would purchase such stock. These representations of fact are alleged to have been untrue, and the promise coupled therewith to secure plaintiff employment as manager is alleged to have been made without any expectation or intention to do so. There are many cases holding that where false statements and misrepresentations of existing facts and conditions are coupled with a promise to do something in the future not intended to be performed, but used merely as an instrument of fraud, an action based on such fraud will be sustained. [Sicklick v. Interurban Home Co., 116 N. Y. Supp. 553; Adams v. Gillig, 115 N. Y. Supp. 999; Reagan v. Hadley, 57 Ind. 509.] Other cases to this effect are cited in 51 American Law Reports, page 85, where it is said: "If the promise is accompanied with statements of existing facts showing the ability of the promisor to perform the promise, without which it would not have been accepted or acted upon, such statements constitute representations, and if falsely made are grounds for avoiding a contract, although the act which is promised to be performed is wholly in the future."

A number of cases are found dealing with promises to give or secure employment which are very similar to the present case. As to such cases, the learned annotator, at page 126 of 51 American Law Reports, says: "The general rule already considered, that fraud ordinarily cannot be predicated on unfulfilled promises or statements as to future events, is illustrated by various cases in which the promise was one of employment, and the same is true with regard to the exception to this rule, where the promise is made with-

out intention of performance. . . . It may be observed in this connection that the promise of employment inducing, or helping to induce, one to enter into contractual relations with the promisor, may be of such a nature as to constitute a misrepresentation of fact, and therefore sufficient to serve as a basis for fraud, as, where the representation is that one *has already arranged* that the other person shall have a certain position or salary."

Thus in Schwab v. Esbenshade, 151 Wis. 513, 517, the action was based on false representations as to the value of shares of stock purchased, and also a false promise to have plaintiff elected a director, treasurer and manager of the corporation. The court admitted the evidence as to the value of the stock but excluded the evidence as to the promise, and the court held this to be error, saying: "There is no serious controversy on this appeal but that the court by its instructions directed the jury to limit its inquiry to the issue of the alleged fraud pertaining to false representations as to the value of the stock, and thus excluded from its consideration and determination the question of the alleged fraud of the defendant in falsely representing to the plaintiff that he had arranged with the other stockholders and directors that if plaintiff purchased defendant's stock he would be made a director, the treasurer, and the business manager of the corporation and receive a salary of forty dollars per week. If these last alleged false representations were made by the defendant, and if plaintiff relied and acted thereon, as he alleges, they manifestly constitute a material representation, and the question of whether or not they were fraudulently made was an essential and material issue."

In Powers v. American Traffic Signal Corp., 167 Minn. 327, 209 N. W. 16, the plaintiff sued for damages for fraud in the sale of stock of a corporation, claiming that a fraudulent promise was made to give him employment. The court there said: "If the employment was a mere scheme entered into by defendant without intending to keep the same and merely as an inducement to consummate the stock deal, there was actionable fraud. . . . The evidence justified the jury in so finding."

In Holmes v. Wilkes, 130 Minn. 170, the court declared the law thus: "It is the law of this state that a vendor, who induces the purchase of his property by false representations, though promissory in nature, at the time not intending to perform them, and not intending that his representations will be made good, is guilty of actionable fraud." This statement of the law was made on these facts: "In August, 1913, the plaintiff and the defendant Wilkes entered into negotiations for the exchange of the lands involved for shares of stock in the Quaker Creamery Company. The court finds

that for the purpose of inducing defendant Wilkes to make such exchange, the plaintiff represented that he held a position with the company at a salary of $1500, which in fact he had; that he would, as a part of the transaction, secure to Wilkes a position at the same salary, going so far as to say that the position had been secured; that the position was not secured; that the plaintiff knew at all times that he could not secure it for Wilkes; that he did not intend to do so; and that such representations were falsely and fraudulently made for the purpose of effecting the exchange and that Wilkes was induced thereby to make it.''

In O'Connor v. Lighthizer (Wash.), 75 Pac. 643, plaintiff had induced the defendant to agree to sell him his business property at an inadequate value by representing that he was buying it for a third party who would put in a bank and give defendant employment. In an action to enforce the contract of sale, which the court denied on account of this fraud, it said: ''Appellant further urged that the pleading is bad, as presenting a case for relief on the ground of fraud, in that its allegations relate to acts to be performed in the future, and not to present or past acts. It is true it does contain allegations as to future acts, and, if it were confined entirely to these, the point urged would become serious. But it also contains averments as to existing facts which are very material. It alleges that appellant stated that Mr. Twohy desired to enter upon the banking and loaning enterprise in Harrington, and that appellant represented him for the purpose of effecting the necessary purchase, and was therefore associated with Mr. Twohy in the contemplated business. These statements as to Mr. Twohy, under the averments of the pleading, became inducements to make the writing in question. They related to existing facts, viz., that Twohy was then arranging to embark upon the business at Harrington, and that appellant was at that time duly authorized by Twohy to act in his behalf.''

There are some later cases in this State, such as Metropolitan Paving Co. v. Investment Co., 309 Mo. 638, 664, 274 S. W. 815, which follow Younger v. Hoge, supra, in approving the rule that misrepresentations as to future events in the nature of promises will not support an action for fraud and deceit even where it is shown that the promisor has no intention to fulfill the promise, but used the same merely as a means of obtaining another's money. In my judgment, this should not be the law in this State. It sanctions fraud of the rankest kind. This court should be in line with the weight of authority and not turn a defrauded suitor out of court for the sole reason that the false representations relied on related to the future and were promissory in their nature, and that it makes no

difference that the promisor knew he could not and did not intend to comply with his promise. This court should say, as it did in Turner v. Turner, 44 Mo. 535, 539: "The judge, in his opinion in the District Court, says the plaintiff is a victim, but he has no legal remedy. If such were the case, it would be a reproach and a scandal to the law, but we are not of that opinion. We see no difficulty in his getting full and adequate redress."

Nor do I think it is a sufficient excuse to say that defendants did not have the legal power to perform the promise made to select plaintiff as manager of the bank, as that power is vested by law in the directors. Defendants represented that they held a majority of the stock of the bank and that the directors had authorized the spokesman to arrange with plaintiff to take such position. We all know that persons may and do bring about the doing of a thing by others, though not having such power personally. Such want of power is not a sufficient excuse for promising to do a thing which the promisor has no intention of even trying to do. It would be a good defense that defendants acted in good faith and intended to make good their promise, but that same failed because of the action of others whom they could not control. That was the situation in Younger v. Hoge, supra. The burden would be on the plaintiff to prove that defendants had no intention to carry out the promise made at the time of making it.

It is true that plaintiff will be held to know that the board of directors of the bank have the sole power to select and employ a manager, and that even the directors have no power under the law to legally bind the bank to retain a person as an employee at a fixed salary or for a fixed time. Plaintiff may well be held to have taken the risk of the defendants not being able to control the directors in this matter of selecting a manager of the bank and of plaintiff himself not being able, when selected, to satisfy the present or future board of directors as to his efficiency or to hold the position after he got it. This, however, is not a justification of their making false representations and promises which they never intended to even try to carry out, and knew that when plaintiff purchased from them this bank stock for $10,000 more than it was reasonably worth, he would not, and they intended that he should not, even get an opportunity to make good his loss. The gravamen of the charge in this petition is that defendants promised that if plaintiff would pay defendants $10,000 more than this bank stock was worth, thereby enriching defendants to that extent, they could and would, or at least would try to put him in a position as manager of the bank, which would at least give him a chance to recoup his loss, when in fact defendants never intended or even desired to have such promise fulfilled. In

connection with such promise the defendants made false statements and representations as to existing facts in order to induce plaintiff to believe and rely on this promise. This action should not be held to fail merely because of being founded in part on a promise to do something in the future. In fact, under the rule that an action for fraud cannot be based on a promise to do something in the future, if the defendants had been in fact the directors of the bank and owners of the majority of the stock and had the legal power to employ plaintiff as manager of the bank, yet the action would fail because founded on a promise to do something in the future. The law should be, and in most jurisdictions is, that a promise which is not intended to be fulfilled, but itself becomes the instrument of fraud by which is obtained the money or property of another, is sufficient to sustain an action based on fraud.

It is not necessary to discuss or determine the measure of damages or to what extent relief will be granted. Whether plaintiff can recover, as he seeks to do, damages because of having resigned his position as bank examiner in order to accept the position of manager of the bank in question, or whether punitive damages will be allowed, is not vital to his cause of action. It is enough to say that on the facts stated he has a cause of action to recover his actual loss because of the excessive price paid for the bank stock.

The court erred in sustaining the demurrer and the case should be reversed and remanded.

*White, J.,* concurs in these views.