Jack E. KLECKER, Plaintiff-Respondent,

v.

John D. SUTTON et al.,
Defendant-Appellant.

No. KCD 26626.

Missouri Court of Appeals,
Kansas City District.

May 5, 1975.

Roger J. Barbieri, Barbieri, Combs & Gotschall, Kansas City, for defendant-appellant.

Major W. Park, Jr., Gage, Tucker, Hodges, Kreamer, Kelly & Varner, Kansas City, for plaintiff-respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

DIXON, Judge.

Plaintiff's suit in the court below was grounded on fraud against a corporate defendant and its officers and agents. Various dismissals and default judgments resulted in the plaintiff's case being submitted against the individual defendant Sutton alone. The jury verdict was for $15,000 actual damages and $15,000 punitive damages against defendant Sutton. He has appealed. The appeal raises issues concerning the propriety of the plaintiff's verdict-directing instruction and the instruction on damages. On those issues, the verdict and judgment are reversed and the cause remanded.

This opinion is written on reassignment after a motion for rehearing was sustained. The matters raised in the motion for rehearing and upon resubmission will be adverted to as necessary in the course of this opinion.

Preliminarily to a consideration of the defendant's claim of error as to the principal instruction, a procedural contention must be resolved. Defendant in his brief here raises three points. The first and third points refer specifically by number to Instruction No. 4 which was the plaintiff's damage instruction. The first point briefed clearly attacks the damage Instruction No. 4. The last point briefed, while specifically directing attention to Instruction No. 4, is

in terms and content an attack on the plaintiff's verdict directing Instruction No. 2. Paragraph 12 of the defendant's motion for a new trial objects specifically to the giving of Instruction No. 2 on the same grounds and in almost identical language with the third point in the defendant's brief. Despite the misnumbering of the instruction, the plaintiff could not have been misled by the error. That he was not is certain, for plaintiff countered the point and argument of defendant head-on in the first point in his brief. Plaintiff's contention on rehearing that the original opinion was based on an instruction "not appealed from" is without merit. The parties on the original submission which was on brief alone joined issue on the claim of erroneous submission under Instruction No. 2, and nothing has been presented to indicate that plaintiff was misled to his prejudice by the misnumbering of the instruction in the defendant's brief.

▬ The defendant's attack on both the verdict-directing instruction and the damage instruction are essentially claims that the instructions lack evidentiary support. The motion for rehearing referred extensively to record evidence as supporting the submission which was not set forth in the original opinion. In order to respond to that portion of the motion, a detailed statement of the facts as they were developed in evidence follows: The finding of the jury being for the plaintiff, he is entitled to have all the evidence favorable to his theory and submission and all legitimate inferences therefrom considered to determine if an evidentiary support for the theory submitted can be found.

So considered, the evidence establishes that the plaintiff in response to an advertisement contacted Jake Edwards Old Southern Pit Barbecue System Inc. to investigate a franchise for a "food service." Plaintiff was by occupation an automobile mechanic and had little or no business experience. His first contact was with a Mr. Hansen described as vice president and the defendant Sutton who was President of Jake Edwards. He was given a brochure which described the offered franchise and quoted a price of $12,500. In this conversation, the plaintiff was told that additionally the "equipment package" would be $14,000. The brochure indicated that financing would be available. Sutton said financing would be available to plaintiff from a bank and that the Jake Edwards Company would purchase the equipment and make the arrangements for plaintiff to make the payments. "In other words the paper would be turned over to me and I would make the payments." The equipment was to be installed on a turn key basis. There were various other representations made as to commissary service management assistance via computer. By telephone, Sutton suggested a location and, after an inspection and consultation with his wife, plaintiff agreed to the location. Sutton and Hansen then presented a franchise agreement which the plaintiff signed after the price was reduced to $11,000 because as plaintiff testified, "He'd [Sutton] like to get a franchise started." The price of the equipment package was also reduced to $12,000. Two thousand five hundred dollars was paid by deposit of a certificate representing shares in a mutual fund, the balance of the $11,000 to be paid on the final site selection. A building was in fact selected, a lease between the corporate defendant and the owner of the building executed and assigned to plaintiff at the same rent. This required a cash expenditure of $2,900. Plaintiff then delivered $11,000 and retrieved his mutual funds.

Thereafter, the plaintiff was tendered an equipment package contract which plaintiff testified was satisfactory as to price and equipment but which by a supplemental agreement required that the plaintiff's franchise be additional collateral for the indebtedness. Plaintiff refused to execute this agreement and around October 1, 1968

retained counsel. This suit was filed in October, 1968.

The evidence concerning the corporate affairs is skimpy. Plaintiff offered the certificate of incorporation showing that Sutton was President and that one Lumby was also an officer. A portion of the corporate minutes was also offered to show that in the fall of 1968 Lumby had misappropriated company funds and that Sutton and the company attorney in October, 1968 recovered $5,000 which was deposited in the company account. Sutton was a required signator on the bank accounts, but checks had been honored without his signature. The amount and nature of these checks was not shown. After Lumby had left the company, Sutton actively managed its affairs. From October, 1968 to June, 1969, approximately $3,000 was withdrawn from the corporate account by checks made to cash and signed by Sutton. Sutton made an explanation of some but not all of these checks, and some bore notations of purpose. The exhibits are almost illegible and all the notations cannot be read. Some appear to be related to Sutton's travel and reimbursement of expenses. His testimony indicates that he was, during that period, involved in an attempt to salvage the interest of the defendant company in an Iowa franchise operation. The corporate defendant was at the time of trial according to Sutton "defunct" having as its only assets the original agreement from Jake Edwards to franchise operations in his name. Except for evidence that Sutton received his stock for services as well as Lumby, there is no evidence of the financial condition of the defendant company prior to October, 1968.

The evidence on the issue of damages is, if anything, more skimpy than that relating to the corporate affairs. Plaintiff testified his franchise was "worthless." An exhibit was offered which *projected* earnings on certain assumptions of gross revenue and expense. This was prepared by defendant corporation and furnished plaintiff. There

is no evidence of any kind as to the projected sales at the site selected except the plaintiff's opinion that it was a "good location." As noted, plaintiff expended $11,000 for the franchise.

The challenged principal instruction, in relevant part, is as follows:

"First, defendant Sutton represented to plaintiff that defendant Jake Edwards Old Southern Pit Bar-B-Que System, Inc., *could* and *would* purchase an equipment package and install it for the plaintiff at a cost of $12,000.00, and that defendant Jake Edwards Old Southern Pit Bar-B-Que System, Inc., *could* and *would* sell the equipment package to plaintiff on an installment basis at a competitive rate of interest, intending that plaintiff rely upon such representation in purchasing the franchise rights, and

Second, the representation was false, and . . ." (Emphasis added.)

Defendant, in a multiple attack on instruction 2 (erroneously labeled number 4 in both briefs), first asserts that the instruction does not constitute grounds for an action in fraud and does not constitute representation of an existing material fact. Reading this with the argument portion of the brief, it is apparent that defendant is claiming that even if the jury found the facts in accordance with the paragraphs of the principal instruction, as a matter of law, a finding of fraud is not justified. Defendant also asserts that the evidence does not support the submission.

Relying primarily on Reed v. Cooke, 331 Mo. 507, 55 S.W.2d 275, 278 (banc 1932), and Yerington v. Riss, 374 S.W.2d 52 (Mo.1964), defendant argues that a case in fraud cannot be made on the basis of a promise even though accompanied by a present intention not to perform the promise. Plaintiff counters with what he has denominated an exception to the rule of *Reed* and *Yerington*. Citing Nichols v. Hendrix, 312 S.W.2d 163 (Mo.App.1958), plaintiff claims that defend-

ant's superior knowledge makes a promise of future performance actionable.

■ Since the submission of this case, Brennaman v. Andes & Roberts Brothers Const. Co., 506 S.W.2d 462 (Mo.App.1973) was decided. *Brennaman* recognized the apparent divergence in the case law and made an extensive analysis of the cases. That analysis demonstrates that the difference in holdings rests upon factual differences. Vital to recovery on the theory of an actionable misrepresentation of an existing purpose of state of mind is a *current* intention by the promisor at the time the agreement is made not to perform. Failure of performance is insufficient to establish such intent. Dillard v. Earnhart, 457 S.W.2d 666, 670 (Mo.1970). III Restatement of Torts, § 530, comment a at 69.

What must be proven to establish a case of fraud is, of course, but one way of stating the legal elements of such an action which must appear as the substantive elements of an appropriate instruction.

The submission set forth above, that defendant *could* and *would*, is a submission that the defendant Sutton's representations were first, that the *corporate entity* had the *capability* to perform *and* the *intention* to perform. The "second" portion requires a finding that these representations were false and "third" that defendant knew they were false.

■ The instruction is modeled on MAI 23.05 which is intended to embrace the conventional submission of fraudulent misrepresentation of an existing fact. The fact that the instruction is so modeled is drawn from the remarks of the trial judge since the instructions in the transcript do not, as Rule 70.01(d), V.A.M.R. requires, bear the designation as to source and modification. The responsibility for the accuracy of the transcript and of compliance with the rules regarding transcripts rests upon counsel who approve the transcript. The annotations and comments in MAI under MAI

23.05 do not refer to the theory of fraud in misrepresenting an existing purpose or state of mind recognized in *Brennaman* and III Restatement of Torts, § 530, comment a at 69. The parties to this appeal do not raise the issue of the necessity of an instruction under that theory requiring a finding on the issue of falsity *at the time* of the making of the representation. Such a requirement would seem to be implicit in circumstances where the representation is the promise of an act to be performed in the future. So also with respect to capability.

That issue need not be reached or decided in this opinion but is mentioned to prevent reliance upon the form of this instruction in future submissions upon the theory of *Brennaman* and the Restatement.

■ The real issue to be reached and decided on this appeal is the sufficiency of the evidence to sustain the submission of a present intent and a present capability to perform the act represented. Defendant, albeit awkwardly, raises in his brief the sufficiency of the evidence to show fraud. The fact that subsequent inability to perform is demonstrated does not sustain an action for fraud based on a misrepresentation of a present intent to perform which is made falsely and with knowledge of its falsity. Dillard v. Earnhart, supra. The record is barren of direct evidence of the *intent* of the corporate entity not to perform at the time the defendant Sutton made the representation that the corporate entity *would* provide the equipment package. There is, of course, some evidence they *could not* subsequently do so. As noted above, that does not demonstrate they *"would"* not.

The fact that there may not be specific evidence of such alleged misrepresentations would not be fatal if enough proof were offered to permit the necessary inference of the corporate intent at the time of the transaction. This because as plaintiff as-

serts such an inference must inevitably be the only way to prove such fraud. Salmon v. Brookshire, 301 S.W.2d 48, 53 (Mo.App. 1957). Taking the evidence in the light most favorable to the plaintiff and drawing all favorable inferences to support the verdict, the question is very close on this record as to the intent to perform. Had the submission been upon the single issue of a promise of future performance, the evidence might support the submission. The submission offered by the plaintiff was clearly and unequivocally a conjunctive submission of two issues, first, that the corporation *would*, second, that the corporation *could* perform.

■ Thus, as posited in the instruction, the evidence must support the finding of the falsity, not only as to the question of *intention* but also *capability*. Such falsity as to capability must appear at the time the misrepresentation occurred. The proof here, regardless of what inference might arise as to the *intention* of the company, falls far short of proof that the acts specified were *incapable* of performance *at the time* the statement was made.

The plaintiff proved by his own evidence that an "equipment package" was tendered to him at the specified price. True, the arrangement was not in the form of a sale too the plaintiff by the defendant Sutton's company and, thus, was not precisely in accord with the claimed representation set forth in the instruction. The plaintiff did not object to that, however; his claim was that he did not want to secure the debt for the equipment with his franchise rights. The question of the security for the debt is not a part of the representation made under the evidence in this record. There is no proof that the defendant Sutton's company *could* not have complied with the representation as to the form of the sale. There is, likewise, a total absence of any proof that the defendant Sutton knew of any incapability of his employer to perform at the time of the alleged statements to the plain-

tiff. Again, the fact of nonperformance does not prove the lack of capability. The reliance upon the facts relating to the issuance of stock for services and the *subsequent* defalcation of Lumby and expenditures of corporate funds by means of cash checks all at a *later* time do not, without further supporting evidence, demonstrate an inability to perform. The defendant's contention that the verdict must fail since the submission was not supported by the evidence must be sustained.

Since the verdict is reversed and the cause remanded, the only other points raised by defendant need be dealt with only insofar as may be necessary to prevent repetition of error on retrial.

Defendant has challenged the use of the plaintiff's damage instruction which the parties agree constituted a direction to the jury to assess the plaintiff's damage on the benefit of the bargain rule of damages in fraud cases. The instruction as it appears in the record is again violative of Rule 70.01(d) since its origin is not shown upon the record copy of the instruction. Resorting to the trial judge's comments and an examination of MAI 4.03, it does in form follow MAI 4.03 and correctly submits a measure of damages under the benefit of the bargain rule. Reynolds v. Davis, 303 Mo. 418, 260 S.W. 994 (1924). The difficulty is again evidentiary. The verdict, as noted, was for $15,000 actual damages.

■ Plaintiff first asserts that the verdict has evidentiary support upon an analysis of the evidence respecting value. He argues, on the basis of a statement of prospective income furnished plaintiff, that plaintiff would have been in a business "earning $24,000 a year" if the defendant had performed. This he contends is evidence of value, as is the contract price of $11,000 for the franchise rights, citing Smith v. Tracy, 372 S.W.2d 925 (Mo.1963). Plaintiff then reasons that if he had acquired the second equipment package at the offered price of $14,000 instead of the $12,-

000 agreed to, he would have been damaged an additional $2,000. Plaintiff does not attempt the impossible by showing how the jury arrived at a $15,000 verdict under this evidence. Plaintiff must, under this analysis, assume that nothing of value was received. When this is assumed, the damages could not exceed $11,000 if the sales price be considered as indicating the value if the franchise had been as represented since he did not, in fact, purchase any equipment. There is nothing in this record to show that the sales price was related to the value if the franchise had been as represented. Dettler v. Santa Cruz, 403 S.W.2d 651, 656 (Mo.App.1966). Smith v. Tracy, supra, which did take the sales price as evidence of value as presented, is distinguishable since no evidence of value in excess of the sales price was claimed or necessary to support the *de novo* review by the appellate court which ultimately set the damages. Plaintiff in this case must rely on some evidence of value in excess of purchase price to support the verdict.

The exhibit referred to by plaintiff to show earnings of $24,000 a year was a prognostication of profits on the assumption of a certain level of gross income. There is not one shred of evidence to indicate what the gross income would have been if the plaintiff had, in fact, commenced operations. There is no evidence which would relate this figure of estimated profit to the value of the business. There being no evidentiary support, the submission was error.

Plaintiff also attempts to justify the submission by a recitation of the various items of general damages, that plaintiff received nothing for his $11,000, that he would receive nothing in the future, that he had been without the use of his money and that he would lose the profits "represented" to him. The evidence did not contain any reference to the monetary value of these items of damage even if they could properly be considered by the jury under the damage theory adopted. It is clear that these items were not appropriate under the instruction. Salmon v. Brookshire, 301 S.W.2d 48, 55 (Mo.App.1957).

Upon the record presented in this case, the evidentiary failure would require a reversal, but nothing appears here that requires a finding that plaintiff could not support by appropriate evidence a submission on that theory.

The judgment for plaintiff is reversed and the cause remanded for a new trial.

All concur.