CAPE RETIREMENT COMMUNITY, INC., Appellants/Plaintiffs,

v.

Harold D. KUEHLE, Collector of Revenue of Cape Girardeau County and the City of Cape Girardeau Respondents/Defendants.

No. 57801.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Oct. 23, 1990.

Edward E. Calvin, Cape Girardeau, for appellants/plaintiffs.

H. Morley Swingle, Pros. Atty., Cape Girardeau, for respondents/defendants.

KAROHL, Judge.

This appeal addresses application of a revenue law previously interpreted by the Missouri Supreme Court. Cape Retirement Community, Inc., (Cape Retirement) a not-for-profit Missouri Corporation, appeals from an order granting summary judgment favoring Harold D. Kuehle, Collector of

Revenue of Cape Girardeau County, Missouri, (Collector). Cape Retirement owns and operates Chateau Girardeau, a life care retirement housing and nursing facility. Cape Retirement applied for refund of ad valorem real estate taxes paid under protest in 1987 and 1988. The trial court entered summary judgment for Collector after finding, as a matter of law, Cape Retirement is not a purely charitable organization under § 137.100(5) RSMo 1986. It relied on *Evangelical Retirement Homes of Greater St. Louis, Inc. v. State Tax Commission*, 669 S.W.2d 548 (Mo. banc 1984). The trial court found Cape Retirement is not exempt from ad valorem taxation pursuant to the charitable use exclusion § 137.100(5) and not entitled to recover taxes paid. We affirm.

■ Summary judgment is proper when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Rule 74.04(c); *Landoll ex rel. Landoll v. Dovell*, 778 S.W.2d 846, 848 (Mo.App.1989). The parties stipulated to the following summary judgment facts.

Cape Retirement is a not-for-profit Missouri Corporation which owns and operates Chateau Girardeau. The Chateau is a life care retirement housing and nursing facility for persons sixty-two years of age or older. It is designed to meet the needs of retired persons with moderate to middle income. Applicants for residence in Chateau Girardeau are required to fill out a detailed financial statement. Prior to approval for residency, Cape Retirement must be satisfied that the applicant's financial resources are sufficient to meet its cost requirements. Cape Retirement does not typically admit people it does not expect to be able to pay its fees. Low income elderly who are unable to pay are excluded from the Chateau by the application process.

However, once an applicant is accepted and a contract drawn, Cape Retirement will continue to provide all services if the resident later becomes insolvent or otherwise unable to pay expenses due to circumstances beyond his or her control while living at the Chateau. Cape Retirement has in fact assumed obligations of insolvent residents. These residents were not required to leave the Chateau and received full care. Their insolvency was not disclosed to other residents.

Residency at Chateau Girardeau is established after payment of a one-time life occupancy and membership fee. Currently, the combined fee ranges from $17,250 to $50,250 a person depending upon the size of apartment selected. In addition, residents pay a monthly service fee after assuming occupancy at the Chateau. For a single person this fee ranges from $472.50 to $546 a month, again depending upon size of apartment selected. The monthly fee is subject to increases of not more than 10% per year. The monthly fee includes one meal per day. Residents must have sufficient income to cover extra services provided by the home and personal needs not provided by the home.

The charitable objective of Cape Retirement is to provide "housing and health nursing care for the aged at below actual cost to the resident and patient." Cape Retirement is exempt from income tax pursuant to 26 U.S.C. § 501(c)(3) of the United States Internal Revenue Code. It is also exempt from Missouri Sales and Use Tax, and income tax pursuant to Chapters 144 and 143 of the Revised Statutes of Missouri.

In accordance with its certificate of incorporation, all excess revenue has been achieved incidentally to the accomplishment of its charitable objective. Cape Retirement has never distributed profit to any individual or corporation. All profit is directed to the charitable objectives of the corporation. Cape Retirement does not receive a Housing and Urban Development subsidy.

■ Cape Retirement claims the trial court erred in overruling its motion for summary judgment. However, the overruling of motion for summary judgment is not an appealable final judgment. *Parker v. Wallace*, 431 S.W.2d 136, 137 (Mo. banc 1968).

■ Cape Retirement also claims the trial court erred in granting summary judgment for Collector after finding Cape Retirement is not a "purely charitable" organization under § 137.100(5) RSMo 1986 and the holding in *Evangelical Retirement Homes of Greater St. Louis, Inc. v. State Tax Commission,* 669 S.W.2d 548 (Mo. banc 1984). Cape Retirement argues it qualifies as a purely charitable organization under § 137.100(5) and the test set forth in *Evangelical* and *Franciscan Tertiary Province of Missouri, Inc. v. State Tax Commission,* 566 S.W.2d 213 (Mo. banc 1978). It contends the property falls under the charitable tax exemption of § 137.100(5) because the property was exclusively used to provide housing, food, social services and nursing care to its residents below actual cost.

Section 137.100 allows certain property to be exempt from state, county or local taxes. Real and personal property actually and regularly used exclusively for purposes purely charitable and held not for private profit is exempt from ad valorem tax. Section 137.100(5) RSMo 1986. In *Franciscan,* the court construed the application of § 137.100(5) and adopted the following definition of charity:

[A] gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, ... by assisting them to establish themselves for life, ... or otherwise lessening the burden of government. * * * A charity may restrict its admissions to a class of humanity, and still be public; ... as long as the classification is determined by some distinction which involuntary affects or may affect any of the whole people, although only a small number may be directly benefited, it is public.

*Id.* at 220 (quoting *Salvation Army v. Hoehn,* 354 Mo. 107, 188 S.W.2d 826, 830 (banc 1945)).

In *Franciscan,* the court also announced a three-prong test to determine whether use of property is charitable such that a charitable exemption is to be granted. First, the property must be owned and operated on a not-for-profit basis. Second, profit earned incidentally to the accomplishment of the charitable objective must be directed towards the charitable objective. Third, the property which is unconditionally dedicated to charity as defined above must benefit society generally as well as the persons directly served. *Franciscan,* 566 S.W.2d at 224. The *Franciscan* court held a not-for-profit corporation which provided housing for low income elderly on a non-profit basis, and at considerably less than cost, was purely charitable and tax exempt under § 137.100. *Id.* at 226.

■ However, not all not-for-profit corporations who provide housing and services for elderly persons at cost or less are engaged in a charitable activity and, therefore, tax exempt. *Evangelical,* 669 S.W.2d at 553. Corporations which automatically exclude low income elderly are not public charities as defined in *Franciscan. Id.* at 554. These corporations do not benefit society generally and "an indefinite number of persons" as required by the *Franciscan* definition of charity as applied to retirement residences. Such corporations fail the second prong of the charitable exemption test.

■ "The public nature of charity is diminished when it is systematically denied to those who need and can least afford the service." *Id.* at 554. Providing retirement homes for the elderly in a non-profit manner rises to a charitable purpose and tax exempt status *if* the same is available to *both rich and poor. Id.* (Our emphasis). Thus, the court in *Evangelical* denied tax exempt status to a retirement home where a substantial sum of money was required for admittance and financial requirements severely limited meaningful access to the retirement home by the majority of elderly. *Id.* at 556–557.

Cape Retirement similarly screens out low income elderly who are unable to meet the present and future costs of its services. It seeks to distinguish itself from Evangelical Retirement Homes in that Chateau Girardeau must continue to retain its residents if they become indigent. Evangelical Retirement Homes allowed an indigent resident to remain only if the resident was

able to justify a waiver. Evangelical Retirement Homes retained sole discretion in granting a waiver. Conversely, Cape Retirement is bound by contract to support those residents, if any, who become financially dependent while living at the Chateau due to circumstances beyond their control.

This distinction is nonpersuasive for two reasons. First, Cape Retirement distributes charity only if a resident, carefully screened by the corporation as financially able, later becomes indigent. The application procedure is structured to avoid the result of providing services to both the rich and poor. Moreover, the home is not operated to benefit society generally as required by the definition of charity. Instead, Cape Retirement provides facilities and services at cost only to those who are able to pay for them indefinitely. It is not enough that Cape Retirement regularly underwrites some of the costs of qualified residents and agrees to fully support selected residents *if* such residents suffer financial reverses because its retirement home is not equally available to both rich and poor.

As a matter of law, Cape Retirement does not operate Chateau Girardeau "exclusively" for charitable purposes. It is not a purely charitable organization entitled to exemption within the meaning of § 137.100(5) RSMo 1986. Accordingly, Collector is entitled to summary judgment. The decision in *Evangelical* requires the summary judgment denying tax exemption to Cape Retirement.

We affirm.

CRANDALL, C.J., and REINHARD, J., concur.