**Dan and Bonnie JUDY, Respondent,**

v.

**ARKANSAS LOG HOMES, INC.,
Respondent–Appellant,**

Norton Company, Respondent.

**Nos. WD 50082, WD 50083.**

Missouri Court of Appeals,
Western District.

March 26, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 1996.

Application to Transfer Denied
June 25, 1996.

Scott W. Mach, The Popham Law Firm, Kansas City, Karl Zobrist, M. Courtney Koger, Blackwell Sanders Matheny Weary & Lombardi, Kansas City, for appellant.

William R. Merryman, Kansas City, for respondent.

Before ELLIS, P.J., and HANNA and SPINDEN, JJ.

ELLIS, Presiding Judge.

This is an appeal and cross-appeal from the Circuit Court of Clay County. On February 19, 1988, Plaintiffs Judys, Haggards, Elders, Weisgerbers, Minders, and Harshmans filed their lawsuit against Arkansas Log Homes, Inc. ("ALH") seeking damages arising from the plaintiffs' purchase of and ALH's manufacture, design, and supply of log home kits used to construct the plaintiffs' log homes. The plaintiffs alleged their homes rotted because the joints between the logs of the home were improperly designed.

Specifically, the ALH log home joints allowed water to penetrate the seal where it was absorbed by the masonite spline which held the joint together, and accumulated and remained in the groove cut in the logs which caused the logs to decay from the interior out. The plaintiffs' Petition for Damages presented five counts: Count I alleged a breach of express warranty; Count II alleged a breach of implied warranty; Count III alleged fraudulent representation; Count IV alleged negligence; and Count V alleged strict products liability.

On January 31, 1990, the plaintiffs filed their First Amended Petition for Damages to join Plaintiffs Langs. The substantive allegations of the amended petition remained unchanged. Thereafter, on April 29, 1991, by means of a Second Amended Petition for Damages, the plaintiffs joined Defendant Norton Company ("Norton") which provided the polyurethane foam gaskets used to seal the joints between the logs of the homes. The original five counts against ALH remained the same, but the plaintiffs added Counts VI through X directed solely against Norton. The counts alleged breach of express warranty, breach of implied warranty, fraud, negligence, and strict products liability, respectively.

Both defendants filed motions for summary judgment asserting the plaintiffs' claims were time-barred. On January 6, 1992, after review of all motions, suggestions, and affidavits and upon hearing oral argument and considering admissions by plaintiffs and information in depositions, the trial court concluded the applicable statute of limitations was five years and sustained Norton's motion on Counts VI through X. However, ALH's motion was denied.[1]

On June 13, 1994, trial commenced wherein the plaintiffs pursued Counts I through V against ALH. At the close of plaintiffs' evidence, ALH moved for a directed verdict. The motion was sustained as to Count I (express warranty) and the plaintiffs voluntarily abandoned and withdrew their claim

under Count V (strict products liability). At the close of all evidence, ALH again moved for a directed verdict. The trial court sustained the motion as to Plaintiffs Langs on the ground their claims were time-barred by the five-year statute of limitations and to Plaintiffs Elders on the ground they failed to prove they purchased an ALH log home. The remaining plaintiffs abandoned and withdrew their claim under Count II (implied warranty). Therefore, only Count III (fraudulent representation) and Count IV (negligence) were submitted to the jury. The jury returned a verdict in favor of Plaintiffs Judys, Harshmans, Haggards, and Weisgerbers on Count III and in favor of Plaintiffs Minders on Count IV, and the trial court entered judgments accordingly. ALH and Plaintiffs Langs and Elders each filed post-trial motions; both were denied. ALH and Plaintiffs now appeal, each asserting several points of error.

On appeal, Plaintiffs Langs and Elders contend the trial court erred in directing a verdict against them. All plaintiffs challenge the trial court's grant of summary judgment in favor of Norton. ALH asserts the trial court erred in denying its motion for summary judgment and its two motions for directed verdict. ALH further alleges the trial court erred in submitting the fraud verdict directing instruction and the Minders' negligence claim.

## SUMMARY JUDGMENT

The trial court sustained Norton's motion for summary judgment on the grounds the plaintiffs' claims against Norton were time-barred by the applicable five-year statute of limitations (§ 516.120).[2] ALH's motion for summary judgment was denied. The plaintiffs and ALH both appeal, alleging error by the trial court.

■ We first address ALH's purported appeal from the trial court's denial of its motion for summary judgment. In its Point I, ALH asserts dual error by the trial court in denying its motion for summary judgment

---

1. Technically, the trial court granted summary judgment in favor of ALH on Count III (fraud). However, the court reinstated that count following plaintiffs' motion to reconsider.

2. All statutory references are to RSMo 1994.

and the subsequent failure to sustain its motions for directed verdict. We will discuss the latter argument, *infra*, but we decline to review the denial of ALH's motion for summary judgment.

In *Parker v. Wallace*, 431 S.W.2d 136 (Mo. 1968), the plaintiff moved for summary judgment and the trial court overruled the motion. After trial, and on appeal, he assigned the denial of his motion for summary judgment as error. Our Supreme Court refused to review the issue, stating:

> The matter of the propriety of the court's action in *overruling* a motion for summary judgment is not an appealable order. Upon that ruling, the issues raised by the pleadings are still in the case, and it is upon those issues, when decided and if timely and properly presented, that an appeal lies. (Citations omitted).

*Id.* at 137. Following *Parker*, this court has frequently held that "[d]enial of a motion for summary judgment is not subject to appellate review, even when an appeal is taken from a final judgment and not from the denial of a motion for summary judgment." *State ex rel. Missouri Div. of Transp. v. Sure-Way Transp., Inc.*, 884 S.W.2d 349, 351 (Mo.App.1994). *See also Kabir v. Missouri Dep't of Social Servs.*, 845 S.W.2d 102, 103 (Mo.App.1993); *Chism v. Steffens*, 797 S.W.2d 553, 557 (Mo.App.1990). We are mindful of the Eastern District's opinion in *Sharpton v. Lofton*, 721 S.W.2d 770 (Mo.App. 1986), where that District reached a contrary result. However, we also note that in later cases the Eastern District has continued to follow *Parker v. Wallace*, without mention of *Sharpton*. *See Cape Retirement Community Inc. v. Kuehle*, 798 S.W.2d 201, 202 (Mo.App. 1990); *Erickson v. Pulitzer Publishing Co.*, 797 S.W.2d 853, 857 (Mo.App.1990). Moreover, this court has recognized that the *Sharpton* court cited no authority for its contrary position, *State ex rel. Missouri Div. of Transp.*, 884 S.W.2d at 352, and has further pointed out that we are required ·to follow the most recent controlling decision of

our Supreme Court. *Id.; Mo. Const. art. V*, § 2 (1945). Therefore, we conclude that we should not review ALH's Point I to the extent that it is contending that the trial court erred in denying its motion for summary judgment.[3]

■ We come now to the plaintiffs' appeal of the summary judgment entered in favor of Norton against all plaintiffs. All plaintiffs assert the trial court erred in doing so.

■ "Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The propriety of summary judgment is purely an issue of law which we review *de novo* on the record submitted and the law. *Id.*

> When reviewing the entry of summary judgment, we view the evidentiary record in the light most favorable to the party against whom summary judgment was granted, determine if any genuine issue of fact exists which would require a trial, and determine if the judgment is correct as a matter of law. We will affirm if the judgment is sustainable as a matter of law under any theory.

*State ex rel. Conway v. Villa*, 847 S.W.2d 881, 886 (Mo.App.1993) (citations omitted). A genuine issue of fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 382.

■ For purposes of summary judgment, "[a] 'defending party' is one against whom recovery is sought." *Id.* at 380. Thus, in the case at bar, Norton is a defending party.

> Where a "defending party" will not bear the burden of persuasion at trial, that party need not controvert *each* element of the non-movant's claim in order to establish a

---

**3.** We are aware that the *Parker v. Wallace* rule was recently criticized in an article appearing in the *Journal of The Missouri Bar*. *See* Jianbin Wei, *Reviewability of Denial of Motions for Sum-* *mary Judgment on Appeal from Final Judgment*, 52 J.Mo.Bar 20 (1996). We offer no comment regarding the arguments set forth therein.

right to summary judgment. Rather, a "defending party" may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense. Regardless of which of these three means is employed by the "defending party," each establishes a right to judgment as a matter of law.

*Id.* at 381.

■ Norton sought summary judgment on the basis that all the plaintiffs' claims against it were barred by the applicable five year statute of limitations, § 516.120. Norton had pleaded the statute of limitations as an affirmative defense in its answer to plaintiffs' second amended petition. The trial court entered judgment for Norton on this ground. The record before us reveals that Norton supported its motion with extensive evidentiary documentation in the form of depositions, answers to interrogatories, and admissions pursuant to requests therefor. It is unnecessary to detail the factual matters upon which Norton relied because of our disposition of this issue. However, we can say that Norton made the prima facie showing required by Rule 74.04(c) and it was therefore incumbent on the plaintiffs to show—"by affidavit, depositions, answers to interrogatories, or admissions on file—that one or more of the material facts shown by [Norton] to be above any genuine dispute is, in fact, genuinely disputed." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. The plaintiffs filed suggestions in opposition to the motion. The suggestions reference affidavits from each of the plaintiffs. However, the affidavits are not contained in the record on appeal.

■ As noted, *supra,* our review of the grant of summary judgment is *de novo.*

*Id.* at 376. It was the plaintiffs' responsibility "to prepare a legal file so that the record on appeal contains all the evidence necessary for determination of questions presented to the appellate court for decision.... [E]videntiary omissions will be taken as favorable to the trial court and unfavorable to the appellant." *Sydnor v. Director of Revenue,* 876 S.W.2d 627, 628 (Mo.App.1994) (quoting *Delf v. Cartwright,* 651 S.W.2d 622, 624 (Mo.App.1983) (citations omitted)). Based on the record before us, those affidavits were the only means by which plaintiffs could carry their burden, in the face of Norton's prima facie showing, of demonstrating that there were genuine issues in dispute. Since they are not included in the legal file, we cannot review them to determine if they did so. Thus, so far as the record is concerned, the plaintiffs failed to carry their burden to contradict Norton's showing and therefore, summary judgment was proper. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381. We will not convict the trial court of error in granting Norton's motion for summary judgment where there is a complete lack of evidentiary exhibits in the record demonstrating that the granting of summary judgment was erroneous.

The trial court's grant of summary judgment to Norton is sustained.

### DIRECTED VERDICT

We next examine the contentions of Plaintiffs Langs and Elders that the trial court erred in directing verdicts against them and in favor of ALH, as well as ALH's claim that the court erred in denying its motions for directed verdict against all other plaintiffs. The trial court determined Plaintiffs Langs' claims were barred by the five year statute of limitations and that Plaintiffs Elders failed to prove they had purchased an ALH log home, an essential element of their claims. Both Langs and Elders appeal. ALH also appeals the trial court's denial of its motion for directed verdict on the fraud count asserted by Plaintiffs Judys, Haggards, Weisgerbers, and Harshmans.[4]

---

4. Note, after the partial grant of directed verdict and plaintiffs withdrawals at the close of plain-

tiffs case and all evidence, see opinion *supra,* only the fraud and negligence counts remained

When reviewing a directed verdict case, we view the evidence and all permissible inferences therefrom in the light most favorable to the plaintiff and disregard contrary evidence and inferences, and on evidence so viewed, determine whether the plaintiff made a submissible case. *Friend v. Holman*, 888 S.W.2d 369, 371 (Mo.App.1994) (review of directed verdict granted in favor of defendant); *Winn–Senter Constr. Co. v. Katie Franks, Inc.*, 816 S.W.2d 943, 944 (Mo. App.1991) (review of denial of defendant's directed verdict). Viewing the evidence in such a manner, we conclude the trial court properly granted ALH's motion for directed verdict against Plaintiffs Langs and Elders and properly denied the motion as to the remaining plaintiffs.

### LANGS' APPEAL

Plaintiffs Langs argue on appeal that the trial court erred in directing a verdict against them on the grounds their fraud claim was barred by the five-year statute of limitations, § 516.120. The Langs bought their log home from ALH in 1978. By 1982, they had experienced wind and water infiltration and had taken steps to try to resolve the problem. Unlike the other plaintiffs, as early as 1983, the Langs had discovered several logs on the south side of the house that were rotten. The logs "sounded kind of hollow. You could stick a knife in them." Furthermore, the Langs were not named as party plaintiffs when the suit was initially filed on February 19, 1988. Rather, they joined the action when the first amended petition was filed on January 31, 1990.

The Langs' claim based on fraudulent representation is governed by § 516.120. *Corley v. Jacobs*, 820 S.W.2d 668, 672 (Mo. App.1991). Pursuant to § 516.120(5), "[a]n action for relief on the ground of fraud ... accrues—not when the resulting damage is capable of ascertainment—but when the facts

constituting the fraud are discovered." *Schwartz v. Lawson*, 797 S.W.2d 828, 832 (Mo.App.1990); *see § 516.120(5)*.[5] Thus, the Langs' cause of action, to have been timely filed, must have accrued on or after January 31, 1985.

The essence of the Langs' fraud claim against ALH, as it was for the other plaintiffs relying on that theory, was that ALH represented and warranted the log home would be durable, long-lasting, and free from deterioration by nature's elements. This contention was premised on, among other things, ALH's representations that the logs were chemically treated and would not rot. In the Langs' case, unlike the other plaintiffs, they discovered rotten logs in 1983. Thus, they had discovered the facts constituting the fraud—the logs did rot—some seven years before they filed suit. Therefore, the trial court did not err in granting a directed verdict against them.

Nevertheless, the Langs, relying on *May v. A.C. & S., Inc.*, 812 F.Supp. 934 (E.D.Mo.1993), contend a cause of action does not accrue until it can be ascertained there was a substantial and reasonable risk of damage. Their reliance on *May* is misplaced for two reasons. First, *May* is a decision of the United States District Court for the Eastern District of Missouri and, as such, is not binding on this court. *See Arbeitman v. Monumental Life Ins. Co.*, 878 S.W.2d 915, 917 (Mo.App.1994). Secondly, the *May* court's conclusion involved a strict liability claim for asbestos contamination, as opposed to the Langs' fraud claim, and therefore involved a completely different cause of action with dissimilar elements of proof.

The Langs next contend that although they may have sustained an earlier injury (rotten logs in 1983), their cause of action did not accrue until the causal relationship between the damage and the defective condition had been ascertained (1987). In other

---

for submission to the jury. Plaintiffs Judys, Harshmans, Haggards, and Weisgerbers submitted their case to the jury under Count III (fraud), and Plaintiffs Minders submitted their case under Count IV (negligence).

**5.** Section 516.120 provides, in pertinent part:

Within five years:

\*   \*   \*   \*   \*   \*

(5) An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.

words, based on *Ray v. Upjohn Co.*, 851 S.W.2d 646 (Mo.App.1993), the Langs argue a cause of action is not deemed to have accrued until the plaintiff can connect the injury with its cause. This argument fails. Such an interpretation is in direct contradiction to the language of § 516.120(5) which states a cause of action for fraud accrues upon the discovery of the facts constituting the fraud. Furthermore, on its face, *Ray* is factually distinguishable. *Ray* involved a worker's lawsuit to recover for personal injuries to his respiratory system as a result of inhaling fumes from a chemical manufactured and sold by the defendant. The court held the worker's cause of action did not accrue (under § 516.100 and § 516.120) until he was actually aware of his medical condition and its cause; the date of diagnosis triggered the running of the statute of limitations. *Id.* at 650–51. Contrary to Langs' contention, *Ray* does not imply that the Langs' discovery of rotten logs in 1983 did not give rise to their cause of action. Rather, such discovery was notice of the "facts constituting the fraud" and triggered the running of the time limitation. *See, e.g., Ruhling v. Robert Dawes Constr. Co.*, 610 S.W.2d 403 (Mo.App.1980) (cause of action accrued in 1968 upon discovery of water leaking through roof even though the actual cause of the leakage was not determined until 1974).

Finally, the Langs assert in their brief that "there must be more than a scintilla or mere indicia of damage in order to trigger the accrual of their cause of action." However, the Langs cite no authority to support this proposition. In fact, cases show a cause of action accrues merely upon the discovery of the facts constituting the fraud; no quantum of damage is required. For example, in *Schwartz v. Lawson*, buyers sued sellers for fraudulent representations that a real estate transaction involved ten acres when in fact, the sellers conveyed only seven. The court determined plaintiffs' cause of action accrued upon their actual discovery that the sellers had conveyed seven rather than ten acres, even though the discovery was made seven years after the transaction was completed. Likewise, the court in *Corley v. Jacobs*, 820 S.W.2d 668 (Mo.App.1991), determined the plaintiff's claims were barred by the five-year

statute of limitations because plaintiff had knowledge of facts which pointed to the defendant's fraud, if any, seven years before he filed his lawsuit.

■■■ As shown by the record, the Langs discovered rotten logs on their home in 1983, nearly seven years before they filed their lawsuit (via Plaintiffs' First Amended Petition for Damages, January 31, 1990). Even if we assumed, *arguendo*, that discovery of a few rotten logs is insufficient "notice" of facts constituting fraud, thereby avoiding the running of the statute of limitations, the Langs still had a "duty to inquire so as to discover the facts surrounding fraud." *Corley*, 820 S.W.2d at 672. When they discovered the rotten logs, the Langs had the *means* of discovering the fraud, if any had occurred. *See Id.* Also, "the plaintiff with the means to discover the fraud will be held to have known it. That is to say, the means of knowledge are deemed to be knowledge itself." *Schwartz*, 797 S.W.2d at 836 (citations omitted). As a result, when the Langs discovered the rotten logs in 1983, they discovered "facts constituting the fraud" which triggered the statute of limitations. Therefore, the directed verdict against the Langs was proper. Point denied.

### ELDERS' APPEAL

The trial court granted ALH's motion for directed verdict against the Elders on the ground that they failed to make a submissible case that their home had been manufactured by ALH. The Elders assign error to the court's action, contending: 1) ALH judicially admitted the Elders purchased an ALH manufactured log home, negating the need to present any evidence on the issue, and 2) nevertheless, the evidence was sufficient to establish a genuine issue of material fact to be resolved by the jury.

■■■ The Elders assert ALH admitted in its Answer to the plaintiffs' Second Amended Petition for Damages that they purchased a log home manufactured by ALH. ·Relying on *In re Marriage of Maupin*, 829 S.W.2d 125 (Mo.App.1992), and *Hewitt v. Masters*, 406 S.W.2d 60 (Mo.1966), they further assert the admission constituted a "judicial admission,"

thereby waiving any need to produce evidence on the issue of their ownership of an ALH log home. Therefore, the Elders contend because they were not required to produce any evidence of their ownership of an ALH home, it was erroneous for the trial court to conclude the Elders failed to make a submissible case. We do not agree.

■ Unlike *Maupin*, a domestic relations action, the case at bar was tried to a jury and therefore, for statements in the defendant's answer to be relied on as a "judicial admission," they must be introduced into evidence and read to the jury. In *Kelsey v. Nathey*, 869 S.W.2d 213 (Mo.App.1993), the plaintiff won a judgment in the small claims court on a breach of contract claim. A *de novo* hearing was held in the circuit court and judgment was again entered in the plaintiff's favor. The defendants appealed to this court alleging, contrary to the trial court's determination, that the plaintiff's wife was an obligee under the contract and should have been joined in the action. The defendants contended the plaintiff judicially admitted his wife was an obligee in his small claims court petition and was therefore bound by that admission in the *de novo* hearing. Relying on *Huber v. Western & S. Life Ins. Co.*, 341 S.W.2d 297 (Mo.App.1960), we explained that for a party to avail himself of the other's pleading, the portion of the pleading desired to be used against the other party must be offered into evidence and read to the jury. *Kelsey*, 869 S.W.2d at 217 (citing *Huber*, 341 S.W.2d at 299–300). Therefore, because the defendants in *Kelsey* did not offer the plaintiff's petition into evidence, we held the purported judicial admission was not evidence and could not be used against the plaintiff. *Id.* Likewise, we find nothing in the record of the instant case that indicates the Elders "availed themselves" of ALH's answer by *offering it into evidence and reading it to the jury.* As a result, the purported judicial admission that the Elders purchased a log home manufactured by ALH is not evidence *and could not be used against ALH.*

■ Nevertheless, the Elders contend sufficient evidence was adduced on the issue to have precluded the trial court from granting ALH's motion for directed verdict. As

set forth, *supra*, we "will view evidence and permissible inferences most favorable to the plaintiff, disregard contrary evidence and inferences and determine whether, on evidence so viewed, plaintiff made a submissible case." *Friend*, 888 S.W.2d at 371. To make a submissible case, the Elders were required to elicit substantial, probative evidence or reasonably drawn inferences from the evidence that they purchased a log home manufactured by ALH. See *Bridgeforth v. Proffitt*, 490 S.W.2d 416, 422 (Mo.App.1973); *Hancock v. Light*, 435 S.W.2d 695, 700 (Mo.App.1968). "[They] must have removed the case from the realm of conjecture." *Friend*, 888 S.W.2d at 373. After reviewing the evidence, we conclude the Elders failed to meet their burden.

The only evidence favorable to the Elder's position was testimony that they (and others) *believed* that Fred Painter was a representative of ALH, and they *believed* that the house they bought from Painter was an ALH home. This testimony fails to rise to the level of "substantial, probative evidence" that would remove from the realm of conjecture the question of whether the Elders in fact purchased an ALH home. Moreover, the evidence to the contrary is overwhelming. ALH did not begin manufacturing log home kits until May 1977 (approximately one year after the Elders' home was believed to have been built); Fred Painter was never an authorized ALH franchise dealer; and no documentation exists showing that either the Elders or Fred Painter purchased an ALH home. Moreover, Painter was listed in the files of Ross and Associates, a franchise dealer of Carolina Log Buildings, Incorporated, which was licensed to sell the "Real Log Home" product in the western Missouri area. Only by pure conjecture could we conclude the Elders purchased an ALH home. Point denied.

### ALH'S APPEAL

■ ALH moved for a directed verdict at the conclusion of the plaintiffs' case, and again at the close of all the evidence, arguing that the plaintiffs' claims were barred by the statute of limitations, § 516.120. On appeal, it asserts the trial court erred in denying its

motions for directed verdict against Plaintiffs Judys, Weisgerbers, Haggards, and Harshmans.[6]

As noted, *supra*, under § 516.120(5), an action for fraud accrues not when the resulting damage is capable of ascertainment, but rather when the facts constituting the fraud are discovered. *Schwartz v. Lawson*, 797 S.W.2d at 832. The plaintiffs in question filed suit on February 19, 1988. Therefore, under the applicable statutes (§§ 516.100 and 516.120), their actions were barred if they accrued prior to February 19, 1983. ALH had the burden at trial of proving the statute of limitations as an affirmative defense. *Business Men's Assurance Co. v. Graham*, 891 S.W.2d 438, 445 (Mo.App. 1994). To prove that it was entitled to a directed verdict as a matter of law, ALH had to present undisputed evidence that the plaintiffs could have discovered the facts constituting the fraud before February 19, 1983. *See Id.* at 446. ALH's motion should only have been granted if there were no factual issues remaining for the jury to decide. *Id.*

ALH contends the evidence at trial is undisputed that each of the plaintiffs sustained wind and water infiltration that was capable of ascertainment prior to February 19, 1983. ALH cites portions of the record wherein the plaintiffs testified they had trouble with wind and water coming into their homes by 1981 or 1982 at the latest. ALH further contends when the plaintiffs experienced the wind and water problems, this constituted the damage, and thus they discovered the fraud. Therefore, according to ALH, before February 19, 1983, plaintiffs' cause of action had accrued, triggering the five-year time limitation which ran before the plaintiffs filed their lawsuit on February 19, 1988.

Plaintiffs' response to ALH's argument is that they sued ALH based on its representations that the logs in their homes were chemically treated, and their log homes would be durable, long-lasting, and free from deterioration from the elements. The plaintiffs maintain, and we agree, that their awareness of wind and water infiltration, in light of ALH's representations that the logs were chemically treated, fails to give the plaintiffs' notice of "facts constituting the fraud." The plaintiffs further argue the record is void of evidence showing they knew or should have known water was accumulating in the grooves of the logs and causing the logs of their homes to rot from within thereby giving them notice the homes were not durable and long-lasting as ALH represented. Moreover, even if they had known of such water accumulation, treated lumber is commonly used for outdoor decking where it is subjected to all the elements, including standing water, and thus, even if plaintiffs had known of such water accumulation, they would not necessarily anticipate rot from within the logs.

Based on the evidence before the trial court, we cannot say ALH presented undisputed evidence that the plaintiffs could have discovered, prior to February 19, 1983, that their log homes were not durable, long-lasting, or free from deterioration by nature's elements. The record does reveal the plaintiffs had experienced wind and/or water leakage by 1982. However, the record also includes the numerous representations made by ALH to the plaintiffs which would minimize any concern they may have normally had with regard to the durability and longevity of their home.

The record also contained evidence that the Judys first began to discover the rotten condition of the logs of their home in 1985. The other plaintiffs, (Weisgerbers, Haggards, and Harshmans) were not aware of the incipient rot within their logs until the Judys visited and assisted them with an inspection of their logs. The rotten condition of the logs was not apparent from the exterior of the logs; only upon Mr. Judy's visit did they discover that they, too, had a problem with rot.

Directing a verdict in favor of a defendant is a drastic measure. *Friend v. Holman*, 888 S.W.2d 369, 371 (Mo.App.1994). "More specifically, a presumption is made in favor of reversing the trial court's grant of a

---

**6.** ALH does not argue error on the part of the trial court in failing to direct a verdict against the Minders under this point. Rather, it does so in its final point, discussed *infra*.

directed verdict unless the facts and any inferences from those facts are so strongly against the plaintiff as to leave no room for reasonable minds to differ as to a result." *Id.* In the case at bar, we cannot say the trial court erred by denying ALH's motion for directed verdict. The record does not reveal facts upon which reasonable minds could not differ, and if contradictory conclusions can be drawn from the evidence, the statute of limitations issue should be submitted to the jury. *Business Men's Assurance Co.*, 891 S.W.2d at 446–47. Point denied.

## JURY INSTRUCTIONS

ALH alleges two points of error regarding plaintiffs' verdict directing instruction submitting their claim of fraud to the jury. First, it contends a specific allegation of fraud contained in the instruction was unsupported by the evidence. Second, ALH asserts the trial court erred in submitting the incorrect alternative in paragraph third because the instruction hypothesized that ALH made representations as to future events.

■■■ As mentioned, ALH contends the trial court erred in submitting the plaintiffs' fraud verdict directing instruction to the jury because it hypothesized a specific allegation of fraud that was unsupported by the evidence. In particular, ALH asserts there was no evidence of a statement made by company representatives or contained in its literature using the words "to prevent rot." To prevail on this point and reverse the jury verdict on the ground of instructional error, ALH must show that the instruction as submitted misdirected, misled, or confused the jury, thereby resulting in prejudice. *Cornell v. Texaco, Inc.*, 712 S.W.2d 680, 682 (Mo. banc 1986); *Burnett v. GMAC Mortgage Corp.*, 847 S.W.2d 82, 84 (Mo.App.1992).

ALH does not challenge the representation that the log homes would be long-lasting and durable. It likewise concedes, and the evidence established, that it represented that the foam seals and masonite spline would "insure a completely weather-tight joint." The record further reveals that ALH represented that the logs were pentachlorophenol treated. Indeed, ALH's president testified they were dipped three times. It represent-

ed this treatment was to minimize "the threat of fungus ... damage." ALH's president further testified that there are four factors necessary for wood to "rot:" water, food for the fungi (the wood material itself), moderate temperature, and oxygen. Thus, the jury had evidence before it that ALH represented to the plaintiffs that the log homes were long-lasting and durable; weather-tight; the logs were penta treated to avoid fungus damage; and that "rot" was a product of fungi, in conjunction with water, temperature, and oxygen. It is specious to suggest that use of the words "to prevent rot" in the instruction in anyway misdirected, misled, or confused the jury. Point denied.

■■ Next, ALH contends the allegations of fraud hypothesized in the fraud verdict directing instruction constitute representations of a future event. ALH premises this contention on the fact that it was selling a kit, and the representations applied to the log homes after the home was put together. It then reasons that the plaintiffs were required to prove ALH *knew* such representations were false at the time they were made, rather than mere *recklessness* as to their truth or falsity.

The fraud verdict directors submitted by the plaintiffs were in the form of MAI 23.05. Paragraph Third of MAI 23.05 requires selection of the appropriate phrase. In the case at bar, plaintiffs submitted that ALH "did not know whether the representations were true or false." The Notes on Use for MAI 23.05 state that this submission is not appropriate for misrepresentation of a future event. Rather, the Notes indicate that for future events, the submission must be that "defendant knew that it was false at the time the representation was made." As indicated, ALH argues the representations were as to future events and therefore, the verdict directors as submitted were erroneous and prejudicial. This point is without merit.

The future event type of case discussed in the Notes refers "to the theory of fraud in misrepresenting an existing purpose or state of mind. . . ." *Klecker v. Sutton*, 523 S.W.2d 558, 562 (Mo.App.1975). In the early case of *Reed v. Cooke*, 331 Mo. 507, 55 S.W.2d 275

(Mo. banc 1932), the court held that fraud cannot be predicated on a mere promise even though accompanied by a present intention not to perform on the ground that even under such circumstances, the promise is not a misrepresentation of an existing fact. However, in *Thieman v. Thieman*, 218 S.W.2d 580 (Mo.1949), the court held that a state of mind, an existing purpose, may be misrepresented and thus constitute a misrepresentation of fact. And later yet, in *Dillard v. Earnhart*, 457 S.W.2d 666 (Mo.1970), the court, acknowledging *Restatement of Torts*, § 530, recognized that fraud for misrepresentation of intention to perform an agreement requires proof of the intention of the promisor not to perform at the time the assurance is given.[7] *Dillard v. Earnhart*, 457 S.W.2d at 670. Thus, "[i]f any doubt existed as to recognition in Missouri of actionable fraud based on misrepresentation of intention to perform, such was eliminated by the implicit holding in *Dillard*. ..." *Brennaman v. Andes & Roberts Bros. Constr. Co.*, 506 S.W.2d 462, 465 (Mo.App.1973). *Brennaman* went on to expressly recognize the theory of fraud in misrepresenting an existing purpose or state of mind. *Id.* And finally, in *Klecker v. Sutton*, 523 S.W.2d 558 (Mo.App.1975), the court stated:

> The annotations and comments in MAI under MAI 23.05 do not refer to the theory of fraud in misrepresenting an existing purpose or state of mind recognized in *Brennaman* and III *Restatement of Torts*, § 530, comment a at 69. The parties to this appeal do not raise the issue of the necessity of an instruction under that theory requiring *a finding on the issue of falsity at the time of the making of the representation. Such a requirement would seem to be implicit in circumstances where the representation is the promise of an act to be performed in the future.*

*Id.* at 562 (emphasis added). *Klecker* is the primary authority cited in the 1990 revision to the Notes on Use for MAI 23.05 relating to future event cases.

From the foregoing, it is clear that ALH's representations in the case at bar were not as to future events. Rather, they were statements of fact that the joints were designed to be weather-tight, the homes were to be long-lasting and durable, and that the logs were penta treated to minimize the threat of rot. These were not representations of an intention to perform or of a state of mind. They were present representations intended to induce plaintiffs to purchase their log homes. Point denied.

## MINDERS' CLAIM

For its final point, ALH contends the trial court erred in denying its motion for directed verdict and submitting Minders' negligence claim to the jury. ALH asserts the Minders failed to make a submissible case in that ALH did not owe the Minders any duty because the Minders were not in contractual privity with ALH. ALH relies on *Crowder v. Vandendeale*, 564 S.W.2d 879 (Mo. banc 1978), wherein the court concluded a first purchaser-homeowner can recover damages from the builder for deterioration damages resulting from a latent structural defect only under the theory of implied warranty of habitability recognized in *Smith v. Old Warson Dev. Co.*, 479 S.W.2d 795 (Mo. banc 1972). The court specifically rejected negligence as an alternative theory of recovery wherein the homeowner could recover if the builder failed to use ordinary care in the construction of the residence. *Crowder*, 564 S.W.2d at 884. ALH also relies on *Clark v. Landelco, Inc.*, 657 S.W.2d 634 (Mo.App. 1983), and argues it "plainly defeats" the Minders' claim for recovery of economic losses based on a negligence theory. *Clark* held that because the plaintiffs were second purchasers, they were not in privity of contract and therefore could not rely upon the implied warranty of habitability. Further, under *Crowder*, the plaintiffs were precluded from asserting any negligence-based claim for their deterioration or loss of bargain damages. *Clark*, 657 S.W.2d at 636. ALH's

---

7. In *White v. Mulvania*, 575 S.W.2d 184 (Mo. 1978), our Supreme Court expressly held that, to the extent *Reed v. Cooke*, 331 Mo. 507, 55 S.W.2d 275 (Mo. banc 1932) stood for the proposition that fraud could not be predicated on state of mind, or intent, it should no longer be followed. *White*, 575 S.W.2d at 188.

reliance on these cases is mistaken. They are factually distinguishable and wholly inapplicable. The case at bar involves plaintiffs' claims of negligence against the manufacturer-designer of a product (log home kit) not the builder of a residence. Furthermore, *Crowder* cannot reasonably be read to preclude a cause of action in negligence against a manufacturer-designer.

■ In fact, contrary to ALH's contention, Missouri has long recognized a cause of action against a product manufacturer and designer based on the theory of negligence. *See Clark v. Zuzich Truck Lines*, 344 S.W.2d 304, 305 (Mo.App.1961) (a manufacturer owes a duty to properly design, manufacture, inspect and test its products); *Commercial Distribution Ctr. Inc. v. St. Regis Paper Co.*, 689 S.W.2d 664, 670–71 (Mo.App.1985). "As liability arises in accordance with general principles of negligence, there must be a duty imposed on a manufacturer … with respect to foreseeable dangerous consequences of a product; and the failure to adhere to such a duty constitutes fault, or negligence." *Commercial Distribution Ctr., Inc.*, 689 S.W.2d at 671 (quoting 72 C.J.S. Supp. Products Liability, § 9, p. 15).[8] *Commercial Distribution Center, Inc.* involved an owner of an underground refrigeration storage facility who sued defendant sub-contractors in negligence for failure to design, distribute, and install an adequate brine line system, brine lines, and supports that were adequate to sustain the expected load in the cold atmosphere of the storage area. The suit sought damages for merchandise in storage being crushed and destroyed. The plaintiff had purchased the facility from a previous owner, who was the contracting party with the defendant. The court found that since the original owner was the contracting party with the defendant, under which the defendant undertook to design, supply, and install the alleged defective devices, and since the devices were improperly designed, their failure was foreseeable by the defendant, and therefore, there was no requirement of privity between the defendant and

the subsequent owner plaintiff. *Id.* at 671. The court went on to hold that there was sufficient evidence to support a finding that the collapse was proximately caused by the defective part under the negligence theory and was therefore an issue for the jury. *Id.*

In the instant case, the Minders claimed ALH negligently designed the log home kit, in particular the joint system, which was defective, and the defective joint system was the proximate cause of their damage. The evidence shows ALH designed and manufactured its log homes with a floating spline/open butt joint with open reservoirs and used an improper and untested foam or polyurethane gasket between the logs that when compressed stayed compressed thereby allowing the interior of the logs in the home to be exposed to the elements and moisture. Furthermore, the evidence reveals the joint was designed with open reservoirs which allowed water to accumulate and utilized a masonite spline which would attract, hold, and absorb moisture in the joint spaces. As a result, the logs were subjected to accelerated rot, just as the clevises in *Commercial Distribution Center, Inc.* were designed using materials such that they would be subject to accelerated corrosion. Thus, the failure of the logs by virtue of rot was foreseeable, and there was no requirement of privity between ALH and the Minders. Moreover, there was sufficient evidence for reasonable minds to find that the rotten condition of the logs was proximately caused by the defective masonite spline and foam gasket. Therefore, ALH's point is without merit and is denied.

The trial court's actions are affirmed in all respects.

All concur.

---

8. Although not implicated in the instant case, note that cases hold a manufacturer-designer owes no duty where the design defect presented by the product is "open and obvious." *See, e.g.,* *Morrison v. Kubota Tractor Corp.,* 891 S.W.2d 422 (Mo.App.1994); *Edwards v. Springfield Coca–Cola Bottling Co.,* 495 S.W.2d 489 (Mo. App.1973).