

# In the Missouri Court of Appeals
## Western District

| | |
|---|---|
| SHAWN STEVENS, ) | |
| Appellant, ) | |
| v. ) | WD75532 |
| ) | FILED: January 21, 2014 |
| MARKIRK CONSTRUCTION, INC., KIRK ) | |
| JONES and DAMAR DEVELOPMENT, ) | |
| INC., ) | |
| Respondents. ) | |

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### THE HONORABLE MARCO A. ROLDAN, JUDGE

### BEFORE DIVISION THREE: KAREN KING MITCHELL, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND GARY D. WITT, JUDGES

Shawn Stevens appeals from the circuit court's judgment entered upon a jury verdict in favor of Markirk Construction, Inc. and Damar, Inc. on Stevens's claim for fraudulent misrepresentation. Stevens contends the circuit court erred in refusing to submit his proposed verdict directing instruction. For reasons explained herein, we reverse and remand.

### FACTUAL & PROCEDURAL BACKGROUND

In 1999, Shawn Stevens became interested in purchasing a vacant lot on which to build a home in a subdivision known as Stone Creek. Stone Creek was owned by Damar, Inc. and was being developed by Markirk Construction, Inc. Stevens was particularly interested in Lot 335 because it was located on a cul-de-sac.

When Lot 335 became available for sale in 2000, Stevens went to view the property more closely and became concerned that "with the apparent lay of the land . . . water would come through the lot." Stevens met with his homebuilder at Lot 335, who also expressed concern that "there was going to be water on the lot."

In March 2000, Stevens paid a deposit to reserve Lot 335 for his later purchase. Prior to placing the hold on Lot 335, he spoke to Kirk Jones, Markirk's President, about his concerns regarding water on the lot. Stevens later testified that Jones told him "[t]here are no water issues on Lot 335, and if there are, I will regrade, we will regrade, we will build retaining walls, whatever it takes to resolve the problem." In May 2000, Jones again told Stevens that "[t]here are no water issues on this lot. If there [are], we'll regrade, build retaining walls, whatever we have to do, to solve it."

Stevens purchased Lot 335 in June 2000. After purchasing the property, Stevens began having problems with water in his yard. Specifically, Stevens testified: "[E]rosion, silt deposits . . . no matter whenever the rain stops . . . it's always soggy. No swing sets, no pools, no patios . . . . I get no use of it." Stevens testified that Jones refused to take any action to prevent or alleviate the flooding. Stevens made unsuccessful attempts to sell the property.

On November 24, 2009, Stevens filed a multiple count petition against Markirk, Jones, and Damar alleging fraudulent misrepresentation in connection with the negotiation and sale of Lot 335. At the jury trial, Stevens's proposed verdict director on the fraudulent misrepresentation claim read in relevant part:

> Your verdict must be for plaintiffs if you believe:

First, defendants represented to plaintiffs that Lot 335 would not flood or that defendants would remedy any flooding problem experienced by Lot 335, and

. . . .

Fourth, defendants made the representation without knowing whether it was true or false . . . .

At the instruction conference, Stevens's attorney asserted that the statements by Jones "represented that the lot *in its current condition* would not flood." Accordingly, counsel argued that Missouri Approved Instruction 23.05 required the jury to be instructed that the scienter element of the fraudulent misrepresentation claim could be proved by showing that Jones "made the representation[s] without knowing whether [they were] true or false." The court denied Stevens's proposed instruction, finding that the representations related to *future events* and therefore invoked the alternate language under MAI 23.05 requiring stricter proof that Jones knew the representations were false at the time he made them.

Stevens's counsel then asked that the verdict director be separated into two representations to reflect: (1) a statement of existing fact (that the lot would not flood in its present condition) with the standard scienter requirement that Jones "knew or should have known" the statement was false, and (2) a statement of a future event (that any future flooding would be remedied) with the more stringent scienter requirement that Jones knew the statement was false when he made it. The court denied the requested instruction.

The court then submitted the case to the jury with the instruction that "defendant Kirk Jones represented to plaintiff Shawn Stevens that Lot 335 would not flood and that if it did, defendants would remedy any flooding problem experienced by Lot 335," and

3

that "defendant Kirk Jones knew that it was false at the time the representation was made." The jury found for defendants on the fraudulent misrepresentation claim, and the trial court entered judgment accordingly. Stevens appeals.[1]

## STANDARD OF REVIEW

The propriety of jury instructions is a matter of law subject to our *de novo* review. *Closson v. Midwest Div. IRHC, LLC,* 257 S.W.3d 619, 625 (Mo. App. 2008). Instructions "shall be given or refused by the court according to the law and the evidence in the case." Rule 70.02(a). The trial court must instruct in compliance with the Missouri Approved Instructions (MAI) if one exists that is applicable to a particular claim. *Closson,* 257 S.W.3d at 625. The instructions "must be supported by substantial evidence, and we review the evidence and inferences in a light most favorable to the submission of the instruction, disregarding all contrary evidence and inferences." *Id.* (quoting *Wright v. Barr,* 62 S.W.3d 509, 526 (Mo. App. 2001)) (internal quotations omitted). We will not reverse a jury verdict for instructional error, including the refusal to give an instruction, unless the error was prejudicial. *Stancombe v. Davern,* 298 S.W.3d 1, 7 (Mo. App. 2009)

## ANALYSIS

A fraudulent misrepresentation must relate to a past or existing fact. *Bohac v. Walsh*, 223 S.W.3d 858, 863 (Mo. App. 2007). "[A]n unkept promise does not constitute

---

[1] The fraudulent misrepresentation claim was submitted to the jury by separate verdict directors against Jones and Damar, and the jury separately found in favor of both defendants. Stevens named both Jones and Damar as respondents in his Notice of Appeal, however, his brief solely challenges the verdict directing instruction against Jones. See *Hunsicker v. J.C. Industries, Inc.,* 952 S.W.2d 376,381 (Mo. App. 1997) (stating that where a plaintiff appeals against more than one party but only argues the liability of one party in his appellate brief, the appeal against the other party is deemed abandoned). Stevens conceded at oral argument that his appeal does not challenge the judgment as it pertains to Damar.

4

actionable fraud unless the promise is accompanied by the defendant's present intent not to perform, which constitutes a misrepresentation of a present state of mind, itself an existent fact." *CADCO, Inc. v. Fleetwood Enterprises, Inc.*, 220 S.W.3d 426, 436 (Mo. App. 2007). Therefore, while the general intent standard necessary to sustain a claim of fraudulent misrepresentation is the speaker's knowledge of the falsity of the representation or ignorance of its truth, where the misrepresentation is a promise, a showing of intent not to perform at the time the promise was made is required.

MAI 23.05, the pattern verdict-directing instruction for fraudulent misrepresentation, requires different instructions on the defendant's state-of-mind depending on whether the alleged misrepresentations were of existing facts or promises of future conduct. MAI 23.05 states, in relevant part:

> Your verdict must be for plaintiff if you believe:
>
> First, defendant (*describe act such as "represented to plaintiff that the motor vehicle was never in an accident"*), and
>
> . . . .
>
> Fourth, [defendant knew that it was false] [defendant knew that it was false at the time the representation was made] [defendant made the representation without knowing whether it was true or false] . . . .

As to paragraph Fourth, the Notes on Use state: "Select the appropriate phrase. The second alternate for Paragraph [Fourth] is required to submit a misrepresentation of a future event. The third alternate is not appropriate for submission of a misrepresentation of a future event."

In cases involving multiple representations, the Committee Comment to MAI 23.05 further provides:

5

Submission of multiple representations in a single verdict directing instruction may create a problem in determining whether all requisite elements (i.e., falsity materiality, knowledge, etc.) have been found as to the same representation. A possible approach would be to submit a separate verdict directing instruction as to each alleged misrepresentation, all in a single package with a single damage instruction and a single verdict form.

Stevens originally proposed a verdict director stating that "defendants represented to plaintiffs that Lot 335 would not flood or that defendants would remedy any flooding problem experienced by Lot 335." During the jury instruction conference, Stevens argued that this proposed submission actually consisted of two fraudulent misrepresentations: (1) a statement of fact regarding the then existing condition of Lot 335, and (2) a promise to remedy any flooding problems that might occur in the future. The court rejected Stevens's request for separate verdict directors, concluding that both misrepresentations related to future promises for which the second scienter alternative in paragraph Fourth of MAI 23.05 applied. [2]

On appeal, Stevens asserts that the statement that Lot 335 "would not flood" was a representation "that the present, existing condition of Lot 335, as developed and graded by defendants, was such that the lot was protected from the flow of excessive surface water." Thus, citing to MAI 23.05's Committee Comment, Stevens argues the circuit court erred in refusing to give two verdict directors: one based on the representation of existing fact that "Lot 335 would not flood" and using the third scienter alternate to paragraph Fourth (i.e. Jones made the representation without knowing whether it was true or false); and a separate verdict director based on the future

---

[2] Although the circuit court found both representations to relate to future events, the court agreed that Stevens's proposed instructions contained two separate representations.

promise that "defendants would remedy any flooding problem experienced by Lot 335" and using the second scienter alternate to paragraph Fourth (i.e. Jones knew the representation was false when he made it).[3]

Conversely, Markirk contends that the statement that "Lot 335 would not flood" was a representation of a future event and, thus, that the circuit court properly submitted one verdict director using the second scienter alternate.

Stevens and Markirk rely on the same cases to support their positions, namely, *Brennaman v. Andes & Roberts Brothers Constr. Co.*, 506 S.W.2d 462 (Mo. App. 1973), and *Judy v. Arkansas Log Homes, Inc.*, 923 S.W.2d 409 (Mo. App. 1996). In *Brennaman*, after being shown model homes from which they could select floor plans and other features, plaintiffs entered into a contract with defendants for the construction of their home. 506 S.W.2d at 463–64. As part of the contract, defendants agreed that the home "would be built 'to FHA plans and specifications.'" *Id.* at 464. When the completed home did not meet such specifications, plaintiffs brought a suit against defendants. "[T]he substance of [plaintiffs'] claim against [defendants] [was] that the contract to sell [plaintiffs] a home was procured by the false representation that the home would be constructed according to certain specifications when, in fact, [defendants] then had a current intention to substitute inferior construction practices and materials." *Id.*

*Brennaman* was the first time this Court "expressly recognize[d] the theory of fraud in misrepresenting an existing purpose or state of mind." *Judy*, 923 S.W.2d at 421

---

[3] Stevens argues, in the alternative, that the circuit court erred in refusing his first proposed verdict director — a single instruction for both representations "using the third alternate to paragraph fourth." However, because Stevens concedes that the second alleged misrepresentation — the promise to remedy future flooding — was a statement of a future event and, thus, requires a present intent not to perform, Stevens's alternative argument must fail.

(citing *Brennaman*, 506 S.W.2d at 465). In doing so, we noted the significant difference between (1) a representation of an intention to perform, and (2) a representation of the "performance, capability, and capacity of products and commodities which . . . are found deficient with the passage of time." *Brennaman*, 506 S.W.2d at 465. This Court explained:

> While the necessity for demonstrating the falsity of the representation by future events is common to both types of action, the distinctions in theory and proof are significant. Misrepresentation of intent to perform requires the measure of the promissor's purpose at the time the agreement is made as against his own subsequent performance. Both the promise and the performance are in such cases at all times within the control of the promissor. Fraudulent misrepresentation of product capability compares the promissor's statements with the consequences, performance or results later derived from the acquisition, use or application of an article then in existence.

*Id.* at 465–66.

After distinguishing the two types of misrepresentations, *Brennaman* went on to hold that the statement that the home "would be built 'to FHA plans and specifications'" was a promise of future conduct. *Id.* at 466. The decision further explained: "[A]ppellants do not complain that the model home exhibited was misrepresented as to quality of materials, construction, durability or capacity, but rather that the home *later constructed* was not, as represented, of like materials and construction as the model." *Id.* (emphasis added).

In *Judy*, the defendant was a manufacturer of log home kits and represented to the plaintiffs that their "log home would be durable, long-lasting, and free from deterioration by nature's elements" because "the logs were chemically treated and would not rot." 923 S.W.2d at 416. At trial, the representations were treated as

8

statements of existing fact and, thus, the verdict director submitted to the jury used the third scienter alternate. *Id.* at 420. On appeal, defendant argued the submission was in error because its representations were to future events. "[Defendant] premise[d] this contention on the fact that it was selling a kit, and the representations applied to the log homes after the home was put together." *Id.* This Court disagreed:

> [T]hey were statements of fact that the joints were designed to be weather-tight, the homes were to be long-lasting and durable, and that the logs were penta treated to minimize the threat of rot. These were not representations of an intention to perform or of a state of mind. They were present representations intended to induce plaintiffs to purchase their log homes.

*Id.* at 421.

In advancing their respective positions, Stevens and Markirk do not interpret the cited authorities differently, nor do they dispute the underlying legal principle: Statements of existing fact require the third scienter alternate, while statements of an intention to perform require the second scienter alternate. Moreover, the parties do not appear to disagree on the legal definition of a representation of existing fact as compared to the legal definition of a representation of an intention to perform. Buried beneath the legal arguments advanced in this case, however, lies a dispute regarding the factual meaning of the statement that "Lot 335 would not flood."

Markirk argues that the alleged statement that "Lot 335 would not flood" was a promise of future performance by focusing narrowly on the word "would" and the future connotation associated with it. The problem with Markirk's argument, however, is that the meaning of the word "would" — or the phrase "would not flood" — can only be determined by reference to the factual context in which it was used. For example, the

representation in *Brennaman* that the home "*would* be constructed according to certain specifications" was a promise of future performance because it was a statement of intent to construct the home a particular way in the future. 506 S.W.2d at 464, 466 (emphasis added). Conversely, in *Judy*, the representation that the "log home . . . *would* be free from deterioration by nature's elements" was a statement of existing fact because the statement was premised on the defendant's representation that the logs were designed and chemically treated to be weather-tight. 923 S.W.2d at 420 (emphasis added).

Here, Stevens's *legal* argument is predicated on his factual contention that Jones represented that Lot 335 had been designed and graded to prevent flooding. Given this factual context, we agree that the representation that "Lot 335 would not flood" constituted a statement of existing fact, regardless of the necessity of a future event to determine whether the lot was actually designed and graded to prevent flooding. See *Brennaman*, 506 S.W.2d at 465–66. Thus, the theory underlying Stevens's fraudulent misrepresentation claim was that Jones made representations as to both the lot's current condition and his intention to remedy any future problems.

A litigant is entitled to have the jury instructed on his theory of the case, provided the instructions are supported by the pleadings and the evidence. *Wright v. Barr*, 62 S.W.3d 509, 530 (Mo. App. 2001). "'The failure to submit an instruction to which a party is entitled is error, and will warrant reversal when the merits of the action have been materially affected.'" *Id.* (quoting *Allison v. Sverdrup & Parcel and Assocs., Inc.,* 738 S.W.2d 440, 454 (Mo. App. 1987)). "[I]n reviewing the evidence to determine if it will

10

support an instruction, we view it in the light most favorable to the proponent of the instruction." *Allison*, 738 S.W.2d at 454.

In the instant case, Stevens's contention that the statement that "Lot 335 would not flood" was a representation regarding the lot's existing condition is consistent with the way he pled his fraudulent misrepresentation claim[4] and is supported by his testimony at trial.[5] Thus, Stevens was entitled to have the statement that "Lot 335 would not flood" submitted to the jury on the theory of a misrepresentation of an existing fact, requiring the use of the third scienter alternate.

Based on the requirements of MAI 23.05, the circuit court erred in failing to submit the alleged representations in two separate verdict directors — one using the third scienter alternate for the representation that "Lot 335 would not flood," and the other using the more stringent second scienter alternate for the representation that "defendants would remedy any flooding problem experienced by Lot 335." Moreover, the court's error in refusing to submit such instruction cannot be viewed as harmless

---

[4] The relevant allegations in Stevens's petition were as follows:

> 44. During negotiations leading to the sale of Lot 335 to Plaintiffs, Kirk Jones expressly represented to Plaintiffs that there had not been, nor would there be, any problems with storm water drainage or flooding on Lot 335.

> 45. Kirk Jones'[s] statement to Plaintiffs that Lot 335 did not have storm water drainage and flooding was patently false.

> . . . .

> 47. Kirk Jones made the express false factual representation that no storm water drainage and/or flooding problems existed on Lot 335 with the intent that Plaintiffs purchase Lot 335.

> 48. Plaintiffs relied on Kirk Jones'[s] express factual representation that no excessive, overflow storm water drainage and flooding conditions existed at the time of Plaintiffs' purchase of Lot 335.

[5] Stevens testified that Jones told him: "There are no problems with water issues on Lot 335," and, "There are no water issues on this lot."

11

because Stevens was entitled to have the jury properly consider his chosen theory of misrepresentation of an existing fact. *Adams v. Badgett*, 114 S.W.3d 432, 436 (Mo. App. 2003). In particular, the jury should have been allowed to consider Stevens's claim that Jones made the statement that the lot would not flood without knowing whether the statement was true or false. Accordingly, the circuit court's error in refusing to give Stevens's proposed jury instructions constituted reversible error.

CONCLUSION

The circuit court's judgment is reversed and the cause is remanded for a new trial consistent with this opinion.

LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

12